**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-CV-00946-RBJ

MARC JOSEPH, Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

    v.

LIBERTY OILFIELD SERVICES INC., CHRISTOPHER A. WRIGHT, MICHAEL STOCK, CARY D. STEINBECK, WILLIAM F. KIMBLE, PETER A. DEA, N. JOHN LANCASTER, JR., BRETT STAFFIERI, KEN BABCOCK, JESAL SHAH, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS & CO. LLC, WELLS FARGO SECURITIES, LLC, CITIGROUP GLOBAL MARKETS INC., J.P. MORGAN SECURITIES LLC, EVERCORE GROUP L.L.C., PIPER SANDLER & CO., TUDOR, PICKERING, HOLT & CO. SECURITIES, LLC, HOULIHAN LOKEY CAPITAL, INC., INTREPID PARTNERS, LLC, PETRIE PARTNERS SECURITIES, LLC, SUNTRUST ROBINSON HUMPHREY, INC., RIC ENERGY IV DIRECT PARTNERSHIP, L.P., and RIC IV LIBERTY HOLDINGS, L.P.,

    Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF CIPRIANO CORREA TO APPOINT LEAD PLAINTIFF AND APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**

Cipriano Correa ("Movant") hereby moves this Honorable Court for an order: (1) appointing Movant as Lead Plaintiff for the Class of all purchasers of the common stock of Liberty Oilfield Services Inc. ("Liberty" or the "Company") issued in connection with the Company's January 17, 2018 initial public offering (the "IPO" or the "Offering") to recover damages caused by Defendants' violations of the federal securities laws (the "Class"); and (2) approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class. This Motion is brought pursuant to pursuant to Section 27 of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(3)(B) (the "Securities Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

1

Movant should be appointed Lead Plaintiff and his selection of counsel should be approved. To Movant's knowledge, Movant is the "most adequate plaintiff" as defined by the PSLRA. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). Movant purchased, and retained, 1,000 shares of Liberty suffering losses of $14,520 and otherwise satisfies the pertinent requirements of Rule 23 of the Federal Rules of Civil Procedure. Additionally, Movant has selected counsel that has extensive experience in securities class actions throughout the country.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On April 3, 2020, Rosen Law commenced this action against certain of the Company's officers, directors, and underwriter for violations of the Securities Act. That same day, Rosen Law disseminated the requisite PSLRA early notice advising class members of the pendency of the action and the 60-day deadline for any class member to seek appointment as lead plaintiff in this action. *See* Declaration of Phillip Kim In Support of Motion of Cipriano Correa to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel, Ex. 1.[1]

The complaint alleges that during the Class Period, Defendants made materially false and/or misleading statements and/or failed to disclose that: (1) there was an oversupply in the hydraulic fracturing services market; (2) Liberty's pricing power was weak; (3) Liberty's services were not increasing and its competition was not decreasing; and (4) as a result, defendants' statements about Liberty's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

On February 5, 2019, the Company announced its fourth quarter and full year 2018 financial and operational results. The press release revealed disappointing revenue and net income. In the press release, Liberty claimed "fleet utilization" for the quarter was "challenging." The Company blamed "last-minute decisions to defer completions in the fourth quarter," which

---

[1] All references to "Ex. __" refers to the exhibits attached to this Declaration.

were caused by a drop in commodity prices and downplayed any potential effect of the oversupply on the Company's services. The press release claimed that demand was high for the Company's fleet. Describing the lost projects as merely deferrals, the Company claimed that these projects "provided Liberty a solid backdrop for utilization at the start of 2019."

Despite Defendants' assurance, the following quarters' financial results continued to note the oversupply of frac fleets materially weighing down Liberty's financial results. Defendants constantly mixed in positive news with these results, muddling investor response.

On April 30, 2019, Liberty issued a press release announcing its financial results for the first quarter of the 2019 fiscal year. The Company reported revenue of $535 million and net income of $34 million. The press release noted that there was an oversupply of staffed frac fleets that caused a drop in pricing. Liberty estimated that 20% of the frac fleets that were active in the prior year were now idle or in the process of being idled. Despite this sobering news, the Company's press release presented a rosy picture of Liberty's financials and the market, and the impression that the effects of the oversupply in pricing had already worked its way through the system and pricing would improve. The Company also announced a $100 million stock repurchase.

On May 1, 2019, Liberty held its earnings conference call, during which Defendant Wright clarified that the cause of the decrease in pricing was the oversupply of frac services, not commodity prices. At the same time, he downplayed the long-term effect of this oversupply and that it had worked its way through the market.

On July 30, 2019, Liberty Oilfield issued a press release announcing its financial results for the second quarter of the 2019 fiscal year. The Company reported revenue of $542 million, slightly up from the previous quarter, and net income of $41 million. Again, Liberty Oilfield noted that there was an oversupply of frac services in the market. At the same time, the Company

3

claimed that it had strong demand for its services and that demand will remain high.

On February 5, 2020, Liberty Oilfield issued a press release announcing disappointing results for the fourth quarter and full year of 2019. In contrast to previous statements, Liberty Oilfield now admitted that there was a "substantial oversupply of frac equipment." In the press release, the Company revealed that even while total frac stages increased, the additional efficiency of each fleet exasperated the oversupply within the fracking services industry.

The price of Liberty's securities has plummeted since the IPO. The IPO price of Liberty was $17.00 per share. On the date of the initiation of this action, Liberty shares closed at $2.48, or over 85% below the IPO price.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Liberty's shares, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

**II.     MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF**

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 60 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 77z-1(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

>     (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules
>     of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii); *In re Crocs, Inc. Secs. Litig.*, 2008 WL 4298316, at * 1- * 2 (D. Colo. Sept. 17, 2008).

As explained below, Movant satisfies the above criteria and is the most adequate plaintiff and should be appointed Lead Plaintiff.

### A. Movant Is Willing to Serve as Class Representative

Preliminarily, in response to the early notice issued on April 3, 2020, Movant made this motion within the 60-day time period. Movant attests that he has reviewed the complaint and is willing to serve as a representative of the class. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class. *See* Ex. 2.

### B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person … that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) (emphasis added); *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). While the PSLRA does not specify how to calculate the "largest financial interest," the approximate losses suffered are the most determinative. *Richardson v. TVIA, Inc.*, 2007 WL 1129344 at * 4 (N.D. Cal. Apr. 16, 2008) (citing cases). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period". *In re Bally Total Fitness, Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005); *Weiss v. Friedman, Billings, Ramsey, Group, Inc.*, 2006 WL 197036 * 3 (S.D.N.Y. Jan. 25, 2006).

Movant purchased, and retained, 1,000 Liberty shares and lost $14,520 in connection with his purchases of Liberty securities. *See* Ex. 3. Movant is not aware of any other individual who has suffered greater losses in Liberty securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed Lead Plaintiff for the

5

Class.

### C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). Federal Rules of Civil Procedure Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification -- a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *See In re Fuwei Films Secs. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008) ("At this point, a prospective lead plaintiff need only make a preliminary, prima facie showing that his or her claims satisfy the requirements of Rule 23."); *Cooke v. Equal Energy Ltd.*, Master Docket CIV14-0087-C, 2014 U.S. Dist. LEXIS 63452, *7 (W.D. Okla. May 8, 2014); *Greebel v. FTP Software*, 939 F. Supp. 57, 60, 64 (D. Mass. 1996). Moreover, typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA. *Crocs*, 2008 WL 4298316, at * 2. And of these four prerequisites, only two – typicality and adequacy – affect the analysis of competing motions for appointment as lead plaintiff. *See Wolfe v. Aspenbio Pharma, Inc.*, 275 F.R.D. 625, 628 (D. Colo. 2011).

### 1.     Movant's Claims Are Typical of the Claims of All Class Members

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." Typicality is demonstrated where the members of the class are victims of the same course of conduct. *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 604 (D. Colo. 1990). Typicality is satisfied when the representative plaintiffs' claims arise from the same event, practice or course of conduct that provides the basis of class claims and are grounded in the same legal or remedial theory. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). Typicality does not require that every class member's claim be identical to those of the representative plaintiffs. *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982). According to the Tenth Circuit, "the typicality requirement is ordinarily not argued…It is to be recognized that there may be varying fact situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory." *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1189 (10th Cir. 1975).

Here, the typicality requirement is met because Movant's claims are identical, non-competing and non-conflicting with the claims of the other Class Members. Movant and all of the Class Members purchased Liberty securities when the prices were artificially inflated as a result of the Defendants' misrepresentations and omissions, and thus, both Movant and Class Members suffered damages as a result of these purchases. Simply put, Movant like all other Class Members: (1) purchased Liberty securities pursuant and/or traceable to the IPO; (2) purchased Liberty securities at artificially-inflated prices as a result of Defendants' misrepresentations and omissions; and (3) suffered damages thereby. Moreover, Movant is not subject to any unique or special defenses. Thus, Movant meets the typicality requirement of Rule 23.

### 2. Movant Will Adequately Represent the Class

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and has made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between Movant's claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from his investments in Liberty securities and is therefore, extremely motivated to pursue claims in this action.

### D. Movant is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiff's class" that the presumptively most adequate plaintiff:

> (aa) will not fairly adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Movant has suffered substantial financial losses and has the largest financial interest in this case of any timely lead plaintiff. The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class.

Accordingly, Movant is presumptively the most adequate plaintiff and should be appointed as Lead Plaintiff for the Class.

### III.  MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 77z-1(a)(3)(B)(v). The Court should only interfere with the Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been actively researching the Class Plaintiff's claims including reviewing publicly available financial and other documents while gathering information in support of the claims against the defendants, as well as filing the initial complaint. Furthermore, the firm is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in courts throughout the nation. *See* Ex. 4. The firm has prosecuted securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

### IV.  CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) appointing Movant as Lead Plaintiff; (2) approving Lead Plaintiff's selection of Rosen Law. as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated:  June 2, 2020                                Respectfully submitted,

*/s/ Phillip Kim*
Phillip Kim
The Rosen Law Firm, P.A.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and Class*

## CERTIFICATE OF SERVICE

I, Phillip Kim, hereby declare under penalty of perjury as follows:

I am an attorney at The Rosen Law Firm, P.A., with offices at 275 Madison Ave, 40th Floor, New York, NY 10016. I am over the age of eighteen.

On June 2, 2020, I electronically filed the following **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF CIPRIANO CORREA TO APPOINT LEAD PLAINTIFF AND APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on June 2, 2020.

*/s/ Phillip Kim*
Phillip Kim