# haynesboone

September 14, 2020

*Via ECF*

The Honorable R. Brooke Jackson
United States District Court Judge, District of Colorado
Alfred A. Arraj United States Courthouse A938, Courtroom A902
901 19th Street
Denver, CO 80294

**Re:    *Correa v. Liberty Oilfield Services Inc., et al.*, No. 1:20-cv-00946-RBJ**

Dear Judge Jackson:

After conferring with Plaintiff's counsel, we write on behalf of all Defendants regarding Defendants' intention to move to dismiss the Amended Class Action Complaint.

This is a putative securities class action alleging false or misleading statements or omissions in the registration statement and prospectus ("Offering Documents") filed with the SEC in connection with Liberty's January 2018 initial public offering ("IPO").  The Complaint should be dismissed for multiple independent reasons.

First and foremost, Plaintiff has not plausibly alleged any material misstatement or omission in the Offering Documents.  Plaintiff's claims rest on the theory, unsupported by any well-pleaded factual allegations, that the market for hydraulic fracturing ("fracking") services in which Liberty operates was experiencing an undisclosed "oversupply" of competition at the time of the IPO and that demand and prices for Liberty's services were consequently declining.  This unsupported theory cannot be reconciled with Liberty's uncontested dramatic revenue growth leading up to and for more than a year after the IPO.  In reality, Plaintiff is attempting to impermissibly use hindsight to seize on an industry oversupply that did not arise until long after the IPO.  The Securities Act does not permit an investor to sue based on hindsight or the failure to be clairvoyant about future events.  *See, e.g.*, *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1198-99 (10th Cir. 2013). And to the extent Plaintiff is challenging Liberty's opinions and expectations about future supply and demand, those claims are foreclosed under the standards set forth by the Supreme Court in *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015).

The Complaint also fails to state a claim for additional reasons.  Plaintiff's allegations, if credited, establish that the statute of limitations bars his claims.  Plaintiff also lacks standing under Section 12 of the Securities Act.  Finally, Plaintiff's Section 15 "control person" claim fails along with the underlying claims, and Plaintiff also fails to plead that certain Defendants controlled Liberty.

### A.   *Liberty's IPO and increasing revenues for the following year.*

Liberty provides fracking services to oil and natural gas exploration and production ("E&P") companies.  Compl. ¶¶ 16, 63.  Leading up to Liberty's January 2018 IPO, demand for Liberty's

Haynes and Boone, LLP
Attorneys and Counselors
2323 Victory Avenue
Suite 700
Dallas, Texas 75219
T (214) 651-5000

services was increasing. *See* Compl. ¶ 49 & Ex. 1. The Offering Documents provided extensive disclosures about Liberty's views of the industry and outlook for the future. For example, Liberty stated that it was experiencing increases in demand and pricing for its services at the time of the IPO and, based on the level of drilling activity it was seeing in the E&P industry, expected further increases in the future. *See* Compl. ¶¶ 67, 69. Liberty also cautioned investors that its business and the pricing for its services were susceptible to market supply and demand forces in a rapidly changing industry over which Liberty had no control. *See, e.g.*, Compl. ¶ 76.

Liberty's revenues following the IPO continued to increase in Q1 and Q2 2018. In future quarters, revenues remained above the revenues from Q4 2017 (Liberty's final full quarter before the IPO) until Q4 2019. Annual revenues also increased leading up to and after the IPO, rising from $375 million in 2016 to $1.49 billion in 2017 to $2.16 billion in 2018. Liberty's success was reflected in its stock price, which stayed above the IPO price for most of 2018 and portions of 2019.

On April 30, 2019, more than a year after the IPO, Liberty disclosed that entering Q4 2018, its business was being affected by a recent trend of fracking capacity oversupply. ECF No. 1 ¶ 66. In early 2020, Liberty disclosed there was a "substantial oversupply of frac equipment *in the second half of 2019*." *Id.* ¶ 69. Shortly after that disclosure, this suit was filed. Plaintiff's theory is that an industry oversupply purportedly existed and was affecting Liberty's business at the time of the IPO and should have been disclosed in the Offering Documents. *See* Compl. ¶ 66.

### B.      *Plaintiff fails to plausibly allege a false or misleading statement or omission.*

Sections 11 and 12 of the Securities Act provide for liability only if the Offering Documents contain untrue statements of material fact or material omissions. The alleged statement or omission must have been false or misleading based on facts that existed at the time of the IPO and cannot be based on hindsight or events that occurred later. *See Slater*, 719 F.3d at 1198-99.

Plaintiff alleges the Offering Documents "falsely claimed that demand exceeded supply and that Liberty Oilfield was experiencing price increases." Compl. ¶¶ 66, 69. But Plaintiff has not alleged facts showing that Liberty's statements about supply, demand, and pricing were false or misleading. Indeed, Plaintiff's unsupported theory cannot be squared with the undisputed fact that Liberty's revenues were ***increasing*** at the time of the IPO and continued an upward trend for more than a year thereafter. Under basic economic principles, if the market for Liberty's services had been oversupplied at the time of the IPO as Plaintiff contends, Liberty's revenues would have been going down, not up. Making no effort to explain this fatal problem with his theory, Plaintiff asks the Court to look at disclosures of two other companies regarding their businesses. Compl. ¶¶ 54-56. The disclosures from other companies concern representations about demand and pricing in their businesses—one of which is not even a fracking company—and *not* the demand and pricing experienced by Liberty. Lastly, Plaintiff attempts to rely on purported former lower level employees of Liberty. Compl. ¶¶ 58-62. But the former employee allegations do not plausibly give rise to an inference that—contrary to Liberty's ***actual*** performance—Liberty was experiencing undisclosed company-wide supply or pricing problems at the time of the IPO. The

allegations at most unremarkably suggest that some subset of Liberty's overall business was competing with other companies on price in 2017 (before the IPO).

Moreover, to the extent Plaintiff challenges Liberty's opinions and expectations regarding supply and demand dynamics and future business prospects, challenges to these opinion statements are foreclosed under the Supreme Court's standards in *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015). Plaintiff does not allege that Defendants disbelieved Liberty's opinions, and the Offering Documents reflect that Liberty divulged the factual bases for each of its opinions (enabling investors to evaluate those for themselves), precluding liability. *Id.* at 195. Liberty's statements about the future are independently protected under the bespeaks caution doctrine because the Offering Documents contained detailed cautionary language about how volatility of supply and demand could negatively affect Liberty's future business. *See Grossman v. Novell, Inc.*, 120 F.3d 1112, 1122-23 (10th Cir. 1997).

### C.     Plaintiff's allegations establish that the one-year statute of limitations bars his claims.

According to Plaintiff, the alleged falsity of Liberty's January 2018 Offering Documents was apparent based on public disclosures by other companies filed prior to or near the time of the IPO and a public article published just after the IPO. *See* Compl. ¶¶ 50-56. While those disclosures and article do not support any infirmity in Liberty's disclosures, if Plaintiff were correct otherwise, the one-year statute of limitations bars these claims since Plaintiff waited over two years to sue. *Caprin v. Simon Transp. Servs.*, 99 F. App'x 150, 156-57 (10th Cir. 2004) (affirming dismissal).

### D.     Plaintiff's allegations establish that he does not have Section 12 standing.

An investor must purchase shares directly in an offering to have Section 12 standing. *Joseph v. Wiles*, 223 F.3d 1155, 1160-61 (10th Cir. 2000). Plaintiff has no standing because he did not purchase shares in the January 2018 IPO at the IPO price of $17.00, but rather alleges he bought Liberty shares in the open market in February 2018 for $21.38. Compl. ¶ 15; ECF No. 43-2.

### E.     Plaintiff's Section 15 claim fails.

Plaintiff's Section 15 "control person" claim fails for failure to plead an underlying primary violation and because it fails to adequately plead that certain Section 15 Defendants had the power to control Liberty. *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1108 (10th Cir. 2003).

The Complaint should be dismissed in its entirety, and Defendants stand ready to file their anticipated motions to dismiss. Defendants respectfully request that the Court order briefing on the schedule agreed to by the parties (ECF No. 46).

Very truly yours,

Thad Behrens
(214) 651-5668
thad.behrens@haynesboone.com