

Laurence Rosen
lrosen@rosenlegal.com

September 22, 2020

**VIA ECF**

The Honorable R. Brooke Jackson
U.S. District Court for the District of Colorado
Alfred A. Arraj U.S. Courthouse A938, Ctrm A902
901 19th Street
Denver, CO 80294

Re:  *Correa v. Liberty Oilfield Services, Inc., et al.,* Case No. 1:20-cv-00946-RBJ

Dear Judge Jackson:

On behalf of Lead Plaintiff Cipriano Correa ("Plaintiff"), I write in response to Defendants' pre-motion letter dated September 14, 2020 ("Defendants' Letter"). Dkt. No. 53.

Plaintiff's amended complaint alleges that Liberty Oilfield's registration statement and prospectus (collectively, the "Registration Statement") filed with the SEC in connection with Liberty Oilfield's January 2018 IPO was false and misleading. Specifically, the Registration Statement (a) failed to disclose that there had been a rapid and unprecedented increase in fracking capacity since mid-2017, which was already causing oversupply of fracking capacity and depressing the prices that fracking companies – including Liberty Oilfield – could charge for their services; and (b) failed to warn that the continuing increase in fracking capacity would further drive down prices until there was sufficient rising demand to absorb the oversupply.

Instead, the Registration Statement falsely stated that fracking supply was decreasing, demand was increasing, and that Liberty Oilfield was experiencing price increases.

***Plaintiff Adequately Pleads that the Registration Statement Contains Misrepresentations and Omissions of Material Fact***

To state a claim under Section 11 of the Securities Act,[1] Plaintiff need only plead that Liberty Oilfield's Registration Statement contains a misstatement or omission of material fact. 15 U.S.C. § 77k(a). Section 11 is an express civil remedy and allows recovery for even negligent conduct.

---

[1] After reviewing the relevant case law and Plaintiff's transactions in Liberty Oilfield stock, Plaintiff agrees with Defendants that Plaintiff does not have standing to bring the Section 12(a)(2) claim. This, however, does not affect Plaintiff's standing to pursue the Section 11 and 15 claims, and there is no dispute that Plaintiff has standing to bring his Section 11 and 15 claims.

*Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 208-210 (1976). Indeed, "liability against the issuer of a security is virtually absolute, ***even for innocent misstatements***." *Herman & MacLean,* 459 U.S. 375, 382 (1983) (emphasis added).

The complaint alleges that, following a downturn in late 2014 that saw many fracking companies exit the market, the fracking industry began mounting a rapid comeback starting in mid-2017. ¶49 Fracking companies began reactivating their idled fleets and adding new fracking capacity at a rate that a fracking CEO described as "unprecedented." ¶51. In an article published approximately one week after Liberty Oilfield's IPO, the Houston Chronicle reported that fracking capacity was poised to climb to a new record height in 2018. ¶50. Industry analysts echoed this sentiment, observing that fracking capacity "just massively increased in a short period of time." ¶51.

Two related companies that attempted to go public at around the same time as Liberty Oilfield both truthfully disclosed the rapid increase in supply of fracking capacity and the adverse effects that such oversupply was having (and would continue to have) on pricing. ¶53. For example, BJ Services, a fracking company that attempted to go public in July 2017, stated in its registration statement that there was excess supply that was keeping prices down, and that the oversupply must be absorbed before prices can recover. ¶55. Nine West Energy, an oilfield services company that went public in January 2018, made similar disclosures. ¶54.[2]

Former Liberty Oilfield employees told Plaintiff that starting from mid-to-late 2017: (a) there was a precipitous increase in supply of fracking capacity as new companies emerged and existing companies started to reactivate idle fleets, (b) as a result, Liberty Oilfield had to cut prices and give discounts because of the increasing supply, and (c) Liberty Oilfield began asking vendors to lower prices in order to Liberty Oilfield to stay competitive amidst the price war. ¶¶57-62.

In their Letter, Defendants argue that there was no oversupply and no price reductions at the time of the IPO because Liberty Oilfield's revenue was higher in 2018 compared to 2017. But revenue is not a reliable metric to evaluate supply/demand balance or pricing. Revenue can increase even while there is oversupply in the market. Indeed, Liberty Oilfield added three additional fracking fleets in the first half of 2018, and the complaint alleges that Liberty Oilfield was able to win new customers from competitors by undercutting others on pricing. ¶61. All this can lead to a short-term boost in revenue even in an increasingly-saturated market. It is telling that even as Liberty Oilfield's quarterly revenue increased, the margins (*i.e.* net income before taxes) was *lower* in the fourth quarter of 2017 and first quarter of 2018 as compared to the third quarter of 2017, and following an increase in the second quarter of 2018, began to fall precipitously again in the second half of 2018.

Indeed, the mere fact that Liberty Oilfield's total revenue rose in 2018 from 2017 does not defeat the complaint's well-pled allegations showing that public sources and other fracking companies

---

[2] While Nine Energy is not a fracking company, its business is dependent on fracking companies. Its registration statement states that its business is dependent on "the supply and demand for hydraulic fracturing and other oilfield services and equipment in North America." (Nine Energy Services, Inc, final registration statement on Form S-1/A, filed with the SEC on Jan. 9, 2018, page 26).

**THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FLOOR ♦ NEW YORK, NY 10016 ♦ TEL: (212) 686-1060 ♦ FAX: (212) 202-3827**

both acknowledged that there was a rapid build-up in fracking capacity that was causing oversupply by the time of Liberty Oilfield's IPO, nor is it sufficient to overcome former Liberty Oilfield employees' account that the oversupply was causing Liberty Oilfield to lower its prices while asking its vendors to do the same.

*The Statute of Limitations Does Not Bar Plaintiff's Claims*

Plaintiff's claims are not barred by the statute of limitations merely because two other companies filed registration statements disclosing oversupply in the fracking industry. Plaintiff was investing in Liberty Oilfield, not in BJ Services or Nine Energy, and had no reason to know that the oversupply in the industry as described in BJ and Nine Energy's registration statements would and was already affecting Liberty Oilfield. *See e.g., Stumpf v. Garvey,* 2005 WL 2127674, at *19 (D.N.H. Sept. 2, 2005) (in Securities Act case alleging that TyCom's prospectus failed to disclose oversupply in the market for undersea fiber optic cables, publicly-available articles reporting that the market for optic cables was not robust do not trigger statute of limitations because those articles do not name TyCom). Indeed, the Registration Statement portrayed Liberty Oilfield as unique – going so far as to say that Liberty Oilfield was expanding even while others were contracting. Plaintiff could not have known that Liberty Oilfield was already cutting prices at the time of the IPO, or that it was asking its vendors to lower prices, or that Liberty Oilfield was getting business only because it was under-bidding its competitors (something that is difficult to sustain). In fact, Liberty Oilfield's Registration Statement specifically told investors ***not*** to rely on any information that may be different from those presented in the Registration Statement. ¶71.

*Plaintiff Adequately Alleges Section 15 Control Person Violation*

Because Plaintiff's amended complaint adequately pleads that Liberty Oilfield violated Section 11, the Individual Defendants and the Riverstone Defendants are liable as "control persons" of Liberty Oilfield under Section 15 of the Securities Act. Defendants' Letter asserts that Plaintiff failed to plead that "certain Section 15 Defendants" had the power to control Liberty Oilfield, without specifying which Defendants. In any event, the Individual Defendants are control persons of Liberty Oilfield because they are officers and/or directors of Liberty Oilfield, and the Riverstone Defendants are control persons of Liberty Oilfield due to their controlling ownership of Liberty Oilfield and ability to nominate directors to Liberty Oilfield's board of directors (a power which they exercised).

Plaintiff is prepared to respond to Defendants' anticipated motion to dismiss, as well as respond to any questions the Court might have.

Respectfully submitted,

*/s/ Laurence Rosen*

Laurence Rosen

cc: all counsel of record (via ECF)

3

**THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FLOOR ♦ NEW YORK, NY 10016 ♦ TEL: (212) 686-1060 ♦ FAX: (212) 202-3827**