# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:20-cv-00946-RM-NYW

CIPRIANO CORREA, et al., Individually and on Behalf of All Others Similarly Situated,

     Plaintiffs,

v.

LIBERTY OILFIELD SERVICES INC., et al.,

     Defendants.

## STIPULATION AND [PROPOSED] ORDER REGARDING THE PRODUCTION OF HARD-COPY DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

**1.    PURPOSE**

Discovery requests and subpoenas served in the Action may call for the production of hard-copy documents and electronically stored information.  Accordingly, the Parties hereby petition the Court to enter this stipulated order regarding the production of documents and electronic data ("Order").

**2.    DEFINITIONS**

2.1    <u>Action</u>: means the above-captioned action.

2.2    <u>Document</u>: has the meaning ascribed to it in Federal Rule of Civil Procedure 34(a)(1)(A).  The term "Document" shall include Hard-Copy Documents and ESI as defined herein.

2.3    <u>Email</u>: means electronic messages sent or received asynchronously via electronic mail applications, including, but not limited to, Microsoft Outlook, Google Gmail, Yahoo Mail, and Lotus Notes.

2.4     ESI: an abbreviation of "electronically stored information," which has the meaning ascribed to it in Federal Rule of Civil Procedure 34(a)(1)(A).

2.5     Extracted Text: means text extracted from a Native Format file and includes at least all headers, footers, Document body information, and any hidden text, if available.  The Extracted Text must not include text of characters that were not part of the text of the original Native Format file, including but not limited to, Bates numbers and Endorsements (except in the cases of redactions as detailed in Section 4.4).

2.6     Hard-Copy Document: means Documents existing in paper form at the time of collection.

2.7     Hash Value: means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm, such as MD5 or SHA, applied to the characteristics of the data set.

2.8     Load File: means an electronic file that is used to import all required production information into a Document database, including, if available and in each case as required by this Order, Document images, Extracted Text or OCR text, Native Format files where required by this Order, Metadata, information indicating Document breaks, information indicating Document family relationships such as those between an Email and its attachments, and information related to embedded content.

2.9     Metadata: The generic term used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file.

2.10    Native Format: means the format of ESI in the application in which such ESI is stored in the normal course.

2

2.11     OCR: means the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format.  The latter text is also referred to as the "OCR text" or simply "OCR."

2.12     Party: means any party to the Action, including all of its officers, directors, and employees.

2.13     Third-Party: means any person or entity other than a Party that is served a subpoena pursuant to Federal Rule of Civil Procedure 45.

2.14     Producing Party: means any Party or Third-Party in the Action that produces Documents.

2.15     Producing Party Group: The Party Groups are (1) Plaintiffs (Cipriano Correa and Marc Joseph), (2) the Liberty Defendants (Liberty Oilfield Services Inc., Christopher A. Wright, Michael Stock, Cary D. Steinbeck, William F. Kimble, Peter A. Dea, N. John Lancaster, Jr., Brett Staffieri, Ken Babcock, and Jesal Shah), (3) the Riverstone Defendants (R/C Energy IV Direct Partnership, L.P. and R/C IV Liberty Holdings, L.P.), and (4) the Lead Underwriter Defendants (Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, and Wells Fargo Securities, LLC).[1]

2.16     Receiving Party: means a Party in the Action to whom Documents are produced.

2.17     Responsive Document: means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party

---

[1] To the extent any Party seeks to request documents from the Non-Lead Underwriter Defendants (Citigroup Global Markets Inc.; J.P. Morgan Securities LLC; Evercore Group L.L.C.; Piper Sandler & Co.; Tudor, Pickering, Holt & Co. Securities, LLC; Houlihan Lokey Capital, Inc.; Intrepid Partners, LLC; Petrie Partners Securities, LLC; and SunTrust Robinson Humphrey, Inc. (n/k/a Truist Securities, Inc.)), the Non-Lead Underwriter Defendants reserve the right to request modifications to this Stipulation.

has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rules of Civil Procedure, Court order, or the agreement by and between any Producing Party(ies) and Receiving Party(ies).

2.18   Email Thread: An electronic conversation between two or more parties via email.

2.19   Tagged Image File Format or TIFF: refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

## 3.   SCOPE

The procedures and protocols set forth in this Order shall govern the production format of Hard-Copy Documents and ESI in this Action, to the extent available.  This Order also governs procedures or criteria for the identification of potentially responsive data types and systems, custodian selection, and the use of keyword search terms. This Order has been agreed to by the Parties at the outset of discovery and remains subject to modification by agreement of the Parties or by Court order. The Parties expect to continue to meet and confer regarding the topics addressed in this Order, and will cooperate in good faith on such matters.

### 3.1   Document and Data Sources

1.   The Parties shall confer in good faith regarding the scope of their search for Documents and information responsive to discovery requests. As part of those conferrals, each Party shall identify and describe all non-custodial data sources which are likely to contain discoverable information.

2.   Sources of non-custodial Documents and ESI may include, but are not limited to: databases, file servers, storage area networks (SAN), network-attached storage (NAS), Email servers, web servers, online data storage such as Dropbox, Box and Google Drive, Document

management systems (DMS), record management systems (RMS), content management systems (CMS), departmental/project/collaborative/shared storage spaces, e-rooms, structured data storage, application data, source code repositories and Hard-Copy Document repositories.

3.      Within 30 days from entry of this Order, or, for a Party served after the entry of this Order, within 30 days from entry of an appearance in this litigation, each Party shall identify the names and titles of custodians who are likely to have discoverable information, subject to Section 3.3.2. As part of this exchange, the Parties will also disclose and describe any non-privileged document retention policies or practices (e.g., retention schedules or policies, auto-delete functions, routine purging, mailbox size limits) or other practices likely to materially impact the existence or accessibility of responsive Documents or ESI.

4.      Sources of custodial Documents and ESI may include, but are not limited to: network folders; Email; desktop hard drives; laptops; removable storage media; online data storage such as Dropbox or Google Drive; and physical files, including desks and desk drawers, file cabinets, storage boxes, and file rooms, where Hard-Copy Documents reside or may have resided during the relevant time period.

5.      Absent a showing of good cause, when complying with discovery obligations under this Order, no Party need restore any form of media upon which backup data is maintained in a Party's normal operations. This includes, without limitation, backup tapes, disks, SAN, and other forms of media.

6.      Absent a showing of good cause, voicemails, personal digital assistants, instant and social media messages, and text messages and other mobile phone data are deemed to be not reasonably accessible and need not be collected.

7.    The Parties reserve the right to request, at any time prior to 60 days prior to the close of fact discovery, inclusion of additional custodians or data sources, additional search terms, or an expansion of the relevant time period.  If a Party objects to the inclusion of such additional custodians, data sources, or search terms, or time period expansion, the Parties will meet and confer to resolve the matter.  If the Parties cannot reach resolution, the Court will determine the matter.

**3.2    Centralized Collections of Relevant Files**

1.    Documents or categories of documents that are easily identifiable and segregable and likely to contain relevant Documents or ESI (*e.g.*, ESI or hard copy file folders dedicated to a relevant topic) may be collected without the use of search terms or other culling methodology.

**3.3    Identification of Responsive Documents**

1.    The Parties shall continue to meet and confer in an effort to conduct discovery in the most efficient and effective manner. Specifically, the Parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information.

2.    Within 30 days from each Party's identification of data sources pursuant to Section 3.1.3 above, the Parties shall confer on any proposed limitations on the scope of discovery, including custodians, sources, date ranges, file types, or any additional proposed method to cull documents for review (*i.e.*, search terms, technology-assisted-review, predictive coding). The following custodian limits shall apply to each producing Party Group: a total of (i) 8 custodians for the Liberty Defendants, (ii) 4 custodians for the Riverstone Defendants, (iii) 6 custodians for the Lead Underwriter Defendants (2 for Morgan Stanley & Co. LLC, 2 for Goldman Sachs & Co. LLC, and 2 for Wells Fargo Securities, LLC), and (iv) 2 for the Plaintiffs.  If any Party believes after review of documents from these custodians that additional custodians are necessary, the

Parties agree to meet and confer in good faith to determine whether additional custodians are appropriate.

3.     Each requesting Party must limit its production requests to a maximum of 15 search terms for the Liberty Defendants and 10 search terms for each other Party Group, unless the Parties agree to additional terms. Search terms must be narrowly tailored to particular issues. Indiscriminately broad terms (such as the Producing Party's company name or its product name) are inappropriate unless combined with narrowing search criteria that sufficiently reduce overproduction and burden. A conjunctive combination of multiple words or phrases (for instance, *computer AND system*) narrows the search and counts as a single search term. A disjunctive combination of multiple words or phrases (for instance, *computer OR system*) broadens the search and counts each word or phrase as a separate search term, unless they are variants of the same word. Where appropriate, Parties must use narrowing search criteria (for instance, *and*, *but not*, or *w/x*) to limit the burden on the Producing Party.  Should the Producing Party object to the requested search terms, the requesting and Producing Parties will meet and confer to attempt to reach agreement on the search terms to be used.  If any Party believes after review of the produced documents that additional search terms are necessary, the Parties agree to meet and confer in good faith to determine whether additional search terms are appropriate.

4.     The Parties must use best efforts to work cooperatively and in good faith to narrow queries as necessary to reasonably reduce the burden on the Producing Party.

5.     The Parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information. For disputes that cannot be resolved without Court intervention, the Parties will follow the procedure set forth in

the "Discovery Disputes" section of the Court's Practice Standards.

6.      Nothing in this Order is intended to alter the Parties' discovery obligations under the Federal Rules of Civil Procedure, the Civil Rules for the District of Colorado, or this Court's Practice Standards.  In the event the obligations imposed by any of those sources conflict with the requirements of this Order, the Court will apply this Order first.

### 3.4     Re-Produced Documents

1.      The production specifications in this Order apply to Documents that are produced in the first instance in this Action.  To the extent any Party is required or agrees to re-produce Documents in this Action that originally were produced by the Party or otherwise in other cases or government investigations, such Documents may be produced in the same format in which they originally were produced.

2.      Re-produced documents shall be produced under, at the election of the Producing Party, its original Bates number or a new Bates number with a cross reference to the original Bates number.

### 4.     PRODUCTION FORMAT

4.1     Format Guidelines: The Parties shall, to the extent reasonably and technically possible, produce Hard-Copy Documents and ESI according to the specifications provided in Exhibit A.

4.2     De-Duplication: A Party is only required to produce a single copy of a responsive Document. Each Party may remove exact duplicate Documents (*i.e.*, identical copies of the same Document), including but not limited to Email, to reduce the unnecessary cost of reviewing and producing exact duplicate Documents.  If a Party chooses to remove exact duplicate

8

Documents, the Party shall make reasonable efforts to remove exact duplicate ESI according to the MD5/SHA-1 hashing method and shall identify all custodians of de-duplicated Documents in an All Custodians field delimited by semicolons (as set forth in Exhibit A). Moreover, (a) de-duplication shall be performed only at the Document family level[2] so that attachments are not de-duplicated against identical stand-alone versions of such Documents and vice versa, although each family member shall be hashed separately for purposes of populating the HashValue field in Exhibit A; (b) attachments to Emails or other Documents shall not be disassociated from the parent Email or Document even if they are exact duplicates of another Document in the production; and (c) Hard-Copy Documents shall not be eliminated as duplicates of responsive ESI. ESI that is not an exact duplicate according to the method specified in Exhibit A may not be removed. A Party may also choose to produce only fully-inclusive Email threads so long as fully-inclusive is defined to ensure that every unique branch of an Email conversation and any unique attachments thereto are produced. The Parties shall make reasonable efforts to reach agreement on any further de-duplication criteria not outlined herein to be used.

4.3     Encryption: The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Order, and if produced in Native Format, the decrypted Document is produced. To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this Order, the Parties have no duty to identify the prior encrypted

---

[2] Unless otherwise agreed upon by the Parties, a family can only be removed through de-duplication based on MD5 or SHA-1 hash values at the family level. If a Party de-duplicates globally, the Party shall identify the de-duplication priority order at the request of any other Party.

status of such Documents.  If Documents are not successfully processed despite use of reasonable efforts, a placeholder TIFF image will be produced stating the file is password protected.  Upon request from either Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such security protection or the production of available Metadata.

4.4     Documents to Be Produced Natively: Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, video files, audio files, and animation files shall be produced in Native Format.  If a Document that would otherwise be produced in Native Format contains privileged information, the Producing Party may produce the Document with redactions applied in the native file or in TIFF format only with redactions and OCR text to remove the privileged material from the searchable text.  Each electronic file produced in Native Format shall be assigned a unique Bates number, as set forth in Section 4.10, and the database record for that file shall include a single page TIFF image branded with this unique Bates number in the lower right corner of the image as a Bates number, with the phrase "PRODUCED IN NATIVE FORMAT" (or similar language) branded in the center of the page.  To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to a protective order must appear on the associated TIFF placeholder in no less than 10-point font.  Files produced in Native Format shall be given file names identical to the Bates number (which shall be determined consistent with Section 4.10), followed by the file extension and include the confidentiality designation after the Bates number, *e.g.*, LIBERTY00000000_CONF.xlsx.   For each file produced in Native Format, the Producing Party shall also indicate its native status in the Native File Metadata field described in Exhibit A.

4.5     Embedded Files: OLE embedded objects (embedded MS Office files, etc.) shall be

extracted as separate files and treated as attachments to the parent Document.  To the extent reasonably possible, images embedded in Emails shall not be extracted and shall not be produced separately. The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

4.6     Databases: Responsive, non-privileged raw data kept in enterprise databases (such as Oracle or SQL databases) that are maintained in the normal course of business will be produced in an electronic format.  The Parties will discuss appropriate procedures and method of production prior to the production of any such enterprise database data, including whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

4.7     Requests for Production of Documents in Native Format: Each Party reserves the right to request production of ESI, including previously produced ESI, in Native Format for any ESI that it believes is not adequately represented in the TIFF format specified in Exhibit A.  To the extent the Producing Party objects to a request for production in Native Format, the requesting Party and the Producing Party will meet and confer in an attempt to reach agreement regarding the request.

4.8     Attachments: The Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except for any Email or attachment(s) that may be withheld or redacted on the basis of any privilege or protection, immunity, or privacy laws or that contain sensitive or proprietary information unrelated to any discovery request propounded in this Action.

4.9     Unitization and Scanning: In scanning Hard-Copy Documents, each page of paper

should be output to a single page TIFF file. In scanning Hard-Copy Documents, Documents are to be produced as they are kept. Distinct, logical document breaks should be defined as such in a standard Load File as described in Exhibit A. In the case of an organized compilation of separate Documents (*e.g.*, a binder containing several separate Documents behind numbered tabs) the Document behind each tab should be scanned separately, but any Document or family relationship among the scanned Documents in the compilation should be reflected in the data Load File at the appropriate standard fields. For Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable. Pages containing post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document. The Producing Party will use best efforts to unitize Documents correctly (*i.e.*, distinct Documents should not be merged into a single record, and a single Document should not be split into multiple records), and maintain Document relationships (*i.e.*, attachment status). Original Document orientation (*i.e.*, portrait v. landscape) should be maintained.

4.10    Bates numbers and Confidentiality Designations for TIFF Images: Each page of a Document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Bates number") containing at least eight (8) digits electronically "burned" onto the image in no less than 10-point font. Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, the Bates number shall be burned on the lower right hand corner of the Document. Bates numbers and any confidentiality designation should not be included in the Extracted Text of ESI. Unless it would obscure, conceal or interfere with any information originally appearing on the Document, any confidentiality designation pursuant to a

protective order entered by the Court in this Action will appear on the lower left hand side of each page of a Document produced, in no less than 10-point font.  The Bates number for each Document shall be created so as to identify the Producing Party and the Bates number (*e.g.*, "LIBERTY00000000").

4.11    Metadata Fields and Processing: Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted or generated from a Document shall be produced for that Document.  The Parties are not obligated to populate any of the fields in Exhibit A manually if such fields cannot be extracted or generated from a Document and its context in the source data, with the exception of the following fields, if available: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) Custodian; (f) Redacted (Y/N);    and (g) Confidentiality.  Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier.  The first line shall be the header with field names, and each subsequent line shall contain the fielded data for a Document.  The Parties also agree that every production of previously unproduced Documents with a Concordance-format delimited file with a .DAT file extension shall contain all of the Metadata field headers from Exhibit A and that the Metadata field values for each Metadata field header will be mapped to the same Metadata field source, unless otherwise agreed in writing. For redacted items which were originally ESI, the following Metadata fields shall be excluded: (i) Author; (ii) From; (iii) To; (iv) CC; (v) BCC; (vi) Subject Line; and (vii) File Name.  Redacted Documents shall be identified as such in the Load File provided with the production.  Nothing herein shall require a Producing Party to create or produce Metadata that does not exist, cannot be generated by ESI processing software, or is not reasonably or technically accessible.

4.12    <u>Production Media</u>: The Producing Party shall produce Document images, Native Format files, load files, and Metadata on hard drives, CDs, DVDs, secure FTP, or other mutually agreeable media ("Production Media").  Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of Documents on the Production Media, and the Bates number ranges of the Documents in that production (*e.g.*, "LIBERTY Production December 1, 2021, LIBERTY00000123-LIBERTY00000456").    To the extent that the Production Media includes any confidential information protected under any protective order entered by the Court, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of any protective order entered in this Action.  Production Media shall include text referencing the case name and number.  Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.  All Production Media that is capable of write protection should be write-protected before production.  All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production.  Productions should be accompanied by a cover letter.

4.13    <u>Original Documents</u>: Nothing in this Order shall eliminate or alter any Party's obligation to retain original and Native Format copies of Documents, of all ESI preserved for and produced in the Action, and/or of original versions of all Hard-Copy Documents preserved for and produced in the Action, including associated Metadata for the foregoing.  Nothing in this section alters a Party's obligation to retain data pursuant to the Federal Rules of Civil Procedure and/or Court Order.

4.14    <u>Color</u>: Hard-Copy Documents or ESI that contain color necessary to decipher the meaning, context, or content of the Document or ESI shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. A Receiving Party may request that any document be reproduced in this color format if reasonably necessary to decipher the meaning, context, or content of the Document or ESI, which request shall not be unreasonably denied by the Producing Party.

4.15    <u>Compressed Files</u>: Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z, .7Z) shall be decompressed so that the lowest level document or file is extracted; provided, however, that packaged discovery materials may be compressed prior to production in order to facilitate electronic transmission.

**5.    PROCESSING SPECIFICATIONS**

The Producing Party will generate and preserve the MD5 or SHA-1 Hash Values of all ESI based on the Native Format file. The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:  Where Documents are not otherwise produced natively, all TIFF images shall display tracked changes, comments, and other rich data (including, but not limited to, hidden text, strikethrough text, etc.) as displayed in the Document, regardless of the display  setting for this information as last saved by the custodian, to the extent reasonably and technically possible. Producing Parties shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of the Parties' productions and shall make reasonable efforts for that time zone to be Coordinated Universal Time (UTC).  The Parties agree to meet and confer in good faith with regard to any issues arising from this aspect of production that may arise.

**6.    CONFIDENTIALITY**

Documents produced in the Action shall be subject to the terms of any protective order agreed upon by the Parties, and entered by the Court, as well as Federal Rule of Civil Procedure 26(b)(5)(B).

**7.    PRIVILEGE**

The terms of this Order are subject to the privilege provisions of any protective order entered in this Action. The Parties agree to exchange privilege logs that comply with Federal Rule of Civil Procedure 26(b)(5) in a form to be agreed upon by the Parties.

**8.    TECHNOLOGY ASSISTED REVIEW**

The Parties agree that Predictive Coding or Technology Assisted Review may be employed to prioritize Documents for review and production.

**9.    AUTHENTICATION**

The Parties stipulate that their production of Documents or ESI in response to a discovery request shall constitute stipulation to the authenticity of the Document or ESI produced to the extent the Document or ESI produced was originally created by the Producing Party. Each Party further stipulates that it will not contest authenticity of any ESI it created and produced so long as the MD5Hash of the ESI matches the MD5Hash identified at the time of production.

**10.    AMENDMENT OF ORDER**

Nothing herein shall preclude the Parties from agreeing to amend the terms of this Order, and nothing herein shall preclude any Party from moving the Court to amend the terms of this Order for good cause shown; provided, however, that no Party may seek relief from the Court concerning compliance with the Order until it has met and conferred in good faith with any

16

Parties involved in the dispute.

SO STIPULATED AND AGREED.

Dated: December 27, 2021                    Respectfully submitted,

*/s/ Yu Shi*                                 */s/ Lee F. Johnston*
Yu Shi                                       Lee F. Johnston, No. 27897
Laurence Rosen                               HAYNES AND BOONE, LLP
THE ROSEN LAW FIRM, P.A.                     1050 17th Street, Suite 1800
275 Madison Ave., 40th Floor                 Denver, Colorado 80265
New York, NY 10016                           Phone: 303.382.6200
Phone: (212) 686-1060                        Fax: 303.382.6210
Fax: (212) 202-3827                          lee.johnston@haynesboone.com
yshi@rosenlegal.com
lrosen@rosenlegal.com                        R. Thaddeus Behrens
                                             Daniel H. Gold
*Attorneys for Plaintiffs*                   Matthew A. McGee
                                             SHEARMAN & STERLING LLP
                                             2828 N. Harwood Street, Suite 1800
                                             Dallas, Texas 75201
                                             Phone: 214.271.5777
                                             thad.behrens@shearman.com
                                             dan.gold@shearman.com
                                             matt.mcgee@shearman.com

                                             Benjamin G. Goodman
                                             HAYNES AND BOONE, LLP
                                             2323 Victory Avenue, Suite 700
                                             Dallas, Texas 75219
                                             Phone: 214.651.5000
                                             Fax: 214.651.5940
                                             benjamin.goodman@haynesboone.com

                                             *Attorneys for Liberty, the Individual*
                                             *Defendants, and the Riverstone Defendants*

                                             */s/ William Leone*
                                             William Leone
                                             NORTON ROSE FULBRIGHT US LLP
                                             1225 Seventeenth Street, Suite 3050
                                             Denver, Colorado 80202
                                             Phone: 303.801.2750
                                             william.leone@nortonrosefulbright.com

17

Brian S. Weinstein
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Phone: 212.450.4972
Fax: 212.701.5972
brian.weinstein@davispolk.com

*Attorneys for the Underwriter Defendants*

SO ORDERED.

_____
HONORABLE NINA Y. WANG
MAGISTRATE JUDGE

Dated:_____

18

## <u>EXHIBIT A – DOCUMENT PRODUCTION SPECIFICATIONS</u>

### 1.      PRODUCTION LOAD FILES

There will be two Load/Unitization files accompanying all productions of ESI:

- The first will be a Metadata import file, in Concordance-format delimited file with a .DAT file extension that contains the agreed-upon Metadata fields. For all .DAT files: if no non-English language is contained in the production, then UTF-8 text encoding is acceptable; however, if there will be non-English language Documents, the text encoding must be in Unicode.

- The second will be a cross-reference file that contains the corresponding image information [IDX] identifying document breaks. The acceptable formats for the cross-reference files are .log and .opt.

### 2.      IMAGES

- Produce Documents in Single Page Group IV TIFF black and white files.

- Image Resolution of at least 300 DPI.

- If either Party deems the quality of the Document produced in TIFF format to be insufficient, the Parties will meet and confer in good faith to determine whether the Producing Party must produce the Document as a color JPEG file.

- File Naming Convention: Match Bates number of the page.

- Insert placeholder image for files produced in Native Format (see Section 4.4.).

- Original Document orientation or corrected orientation shall be retained.

### 3.      SPECIAL FILE TYPE INSTRUCTIONS

- Certain file types shall be produced in Native Format, as specified in Section 4.4.

- If redactions are required, see production requirements specified in Sections 4.4 and 4.11.

### 4.      FULL TEXT EXTRACTION/OCR

- Where available, produce full Extracted Text for all file types.  Redacted Documents should be OCRed and a redacted text file should be produced.

- Produce OCR text output for any Hard-Copy Document.

- Produce OCR text output for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF, etc.) where Extracted Text cannot be provided, using industry standard OCR technology. (Redacted text will not be produced).

- *Production format*: Single text file for each Document, not one text file per page.

- *File Naming Convention*: Match Beg Bates number.

**5.     ESI (AND HARD-COPY DOCUMENTS TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS**

- Source: Name of Party Producing the Document.

- BegBates: Beginning Bates number.

- EndBates: Ending Bates number.

- BegAttach: Beginning Bates number of the first Document in a Document family range. Documents that are part of Document families, *i.e.*, containing parents and attachments, should receive a value.

- EndAttach: Ending Bates number of the last Document in attachment range in a Document family range.  Documents that are part of Document families, *i.e.*, containing parents or attachments, should receive a value.

- All Custodians: Names of all custodians who had a copy of a Document including custodians whose version of the Document was removed through the de-duplication process, if applicable.

- FileName: Filename of the original source ESI as stored by the custodian.

- NativeLink: Path and filename to produced Native Format file (see Section 4.4).

- EmailSubject: Subject line extracted from an Email message.

- Title:  Title field extracted from the Metadata of a non-Email Document.

- Author: Author field extracted from the Metadata of a non-Email Document.

- From: From field extracted from an Email message, including, to the extent available, both the display name and the SMTP address.

- To: To or Recipient field extracted from an Email message, including, to the extent available, both the display name and the SMTP address.

- CC: CC or Carbon Copy field extracted from an Email message, including, to the extent available, both the display name and the SMTP address.

- BCC: BCC or Blind Carbon Copy field extracted from an Email message, including, to the extent available, both the display name and the SMTP address.

- DateSent: Sent date of an Email message (mm/dd/yyyy  format).

- TimeSent: Sent time of an Email message (hh:mm:ss format).

- DateCreated: The origination date of the Document (mm/dd/yyyy format).

- DateLastModified: Last modification date (mm/dd/yyyy format).

- PageCount: The number of pages of the Document, excluding the pages of Documents in the same family.

- MD5/SHA1 HashValue: MD5 or SHA-1 Hash Value, but please specify using field name.

- File Extension: File extension of Document (.msg, .doc, .xls, etc.).

- ExtractedText: File path to Extracted Text/OCR File.

2

- <u>Confidentiality</u>: "Highly Confidential" or "Confidential," if a Document has been so designated under a protective order entered in this Action; otherwise, blank.

- <u>Attach Count</u>: Number of attached files.

- <u>Attach Range</u>: The Bates number range of the attached files.

- <u>Message-ID</u>: The Outlook Message ID assigned by the Outlook mail server, if applicable.

- <u>Redacted (Y/N)</u>: Whether the Document contains redactions.

- <u>Native File</u>: Whether the document has been produced as a native file.

## 6.    DE-DUPLICATION

- De-duplication method: Parties may make reasonable efforts to de-duplicate stand-alone Documents or entire Document families globally using MD5 or SHA-1 Hash value matching (see Section 4.2).

- Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced.

## 7.    SEARCH TERM INDEX

- If any Party applies search terms to identify or cull documents, the following specific Metadata Fields shall be included in the search index used, unless otherwise agreed between the Parties:

  - Extracted Text
  - Location (File path in the ordinary course of business)
  - File Name

3