**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-CV-00946-RM-NYW

CIPRIANO CORREA et al., Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

LIBERTY OILFIELD SERVICES INC., et al.,

    Defendants.

---

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

---

Lead Plaintiff Cipriano Correa and named plaintiff Marc Joseph ("Plaintiffs") respectfully submit this reply in further support of their Motion for Class Certification.

## I. INTRODUCTION

Plaintiffs' opening brief established that securities class actions such as this one are ideally suited for class treatment under Rule 23(a) and (b)(3). Defendants concede that Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy are satisfied.

Defendants' only argument against class certification is that common questions do not predominate. As an initial matter, Plaintiffs do not oppose ending the class period at the end of the lock-up period on July 11, 2018, mooting Defendants' contention that questions regarding standing/traceability and reliance defeat predominance. What remains are speculative arguments - concerning investor knowledge, statute of limitations, and damages – that courts all over the country have consistently found to be insufficient to overcome class certification.

1

***Knowledge***: Defendants argue that the facts Plaintiffs allege to have been misrepresented and omitted from Liberty's Registration Statement were already in the public domain via, among other things, analyst reports and other companies' SEC filings. Whether these public sources can support the affirmative defense that investors had actual knowledge that Liberty's Registration Statement contained untrue statements and omitted material facts can easily be resolved on a class-wide basis. Either this information was widely reported at the time of the IPO or it was not. And, whether those public sources were sufficient to impute to investors actual knowledge of the full extent of the misrepresentations and omissions in Liberty's Registration Statement will apply equally to all class members.

Therefore, common questions regarding this affirmative defense will predominate over any speculative individual questions. More specifically, before this purported affirmative defense would even come into play, the jury will first have to decide the common question of whether Liberty's Registration Statement contained untrue statements or omitted material facts. If the jury so finds, the jury will next decide the common question of whether the publicly-available sources Defendants rely on actually could have informed investors of the full extent of the untruths and material omissions. Only if the jury also resolves this question in Defendants' favor would it arguably be necessary to determine which investors actually knew the information.

Moreover, Defendants have failed to submit the specific evidence of investor knowledge that the case law requires. While Defendants repeatedly assert that institutional investors "would have" read the relevant public information, Defendant' assertion is not proof that any investor *actually did read* the relevant public information. Nor is it proof of what conclusions investors drew from the articles in the context of other publicly-available information. Additionally,

Defendants' focus on public disclosures of *industry-wide trend* ignores one of Plaintiffs' central, *company-specific* allegations: that instead of experiencing pricing increases, Liberty was actually cutting prices and giving discounts at the time of the IPO. None of the publicly-available information that Defendant cite to mentioned that Liberty was reducing prices at the time of the IPO; indeed, this is a company-specific fact that Plaintiffs learned only through interviews with former Liberty employees. The absence of this information in the public domain during the class period is fatal to Defendants' affirmative defense of investor knowledge.

*Statute of Limitations*: For this action to be barred by the statute of limitations, Defendants have to show that class members had either inquiry or actual notice of the alleged misrepresentation and omissions in Liberty's Registration Statement. It is beyond dispute that inquiry notice is assessed under an objective standard and subject to generalized (*i.e.* class-wide) proof. That is, publicly-available sources were either sufficient to put any reasonable investor on notice, or they were not. Indeed, Defendants concede that inquiry notice does not create individualized questions precluding class certification.

Defendants, therefore, are left with showing that class members had actual knowledge. As discussed above, Defendants have not established beyond conjecture that any class member actually had actual knowledge of the full extent of the misrepresentations and omissions in Liberty's Registration Statement, specifically that: (1) there was oversupply in the fracking industry at the time of the IPO, and (2) Liberty was cutting prices at the time of the IPO. Moreover, none of the publicly-available information Defendants cite to prior to November 2018 even stated that Liberty was experiencing price declines. While Defendants point to disclosures starting in November 2018 about demand and prices falling at Liberty, they were at most

3

disclosures about demand and pricing *at those points in time – e.g.,* in November 2018 – rather than disclosures about market conditions and Liberty's pricing *existing in January 2018, the time of the IPO*. Plaintiffs have agreed the class period should end on July 11, 2018. Disclosures of conditions and pricing at specific points in time long after the end of the class period do not provide investors with knowledge of misrepresentations or omission in Liberty's Registration Statement,[1] are irrelevant to the statute of limitations, and do not defeat predominance.

*Damages*: The Securities Act provides a uniform, statutory formula for calculating damages. This statutory formula is common to all class members. Defendants' argument boils down to the unremarkable proposition that in any securities class action, there will be investors who suffered no damages. This is a non-issue as those investors are specifically excluded from the class. Courts routinely certify securities class actions that exclude investors with no compensable damages. Defendants' other contention - that investors who purchased IPO and non-IPO shares would not know how to calculate damages - is a manufactured controversy. First, Plaintiffs have agreed to end the class period on July 11, 2018. Any shares purchased prior to July 11, 2018 - the date that the lock-up period expired – are IPO shares because only IPO shares were available for trading before July 11, 2018. Second, where a class member has a number of purchases and sales that must be matched, courts generally accept one of two techniques to calculate losses: "first in, first out (FIFO)" or "last in, first out (LIFO)." Indeed, Plaintiffs are not aware of – and Defendants have not identified any – instances where courts denied class certification in Securities Act cases simply because there are individualized questions as to

---

[1] Nor do they reveal anything about market conditions or Liberty's pricing during the class period from the IPO to July 11, 2018.

damages. The opposite is true: courts routinely certify Securities Act classes even when individualized questions regarding damages are present.

## II. ARGUMENT

### A. Questions Regarding Defendants' Actual Knowledge Defense will not Predominate

In asserting their knowledge affirmative defense, Defendants accuse Plaintiffs of "ignor[ing]" it, as if it were Plaintiffs' burden to carry (it is not), and as if Plaintiffs were to be faulted for not proactively refuting yet-to-be-made arguments. Under Section 11 of the Securities Act, investor knowledge is an affirmative defense, and it is not Plaintiffs' burden on a class certification motion to prove the nonexistence of each class member's knowledge. *See, e.g., In re IndyMac Mortg.-Backed Sec. Litig.,* 286 F.R.D. 226, 238 (S.D.N.Y. 2012) ("[Defendants] state that plaintiffs and their expert are conspicuously silent on the issue of investor knowledge…Defendants ignore the fact that knowledge is an affirmative defense, not a required element of a Securities Act claim. In order to defeat predominance on this basis, Defendants must provide evidence that [class members had actual knowledge of the alleged misrepresentations] sufficient to outweigh common issues").[2]

Here, Defendants' investor knowledge defense is insufficient to defeat predominance for several reasons:

*First*, any individualize actual knowledge defense will not predominate over core liability questions common to the class. The jury will first have to make a threshold determination that that Liberty's Registration Statement contained untrue statements or omitted material facts.

---

[2] Unless otherwise noted, all internal quotations and citations are omitted, and all emphases are added.

Then, if the jury finds that there were material untrue statements or omissions, the jury will have to find whether the *full extent* of what was untrue or not properly disclosed was knowable from public sources. Not until this point in the litigation would individual inquiries concerning Defendants' actual knowledge defense even become arguably necessary. Moreover, if the jury finds against Defendants on the second point, *i.e.* that the public information was insufficient to convey the full extent of what Plaintiffs allege to have been misrepresented in the Registration Statement, then the knowledge affirmative defense will equally fail for all class members. Denying class certification would result in potentially thousands of trials just to establish the threshold liability question - whether the Registration Statement contained the alleged misrepresentations.[3]

Indeed, the Supreme Court recently and clearly instructed: "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as…some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016). Courts in this district and all over the country agree. *See, e.g., In re Oppenheimer Rochester Funds Grp. Sec. Litig.,* 318 F.R.D. 435, 448 (D. Colo. Oct. 15, 2015) (granting certification of Section 11 claims and holding that "[a]s a general rule, courts have been reluctant to deny class action status because affirmative defenses might be available against different class members as long as the defenses do not overshadow the primary claims."); *In re Lyft Inc. Sec. Litig.,* 2021 WL 3711470,

---

[3] Additional class-wide questions include whether the Underwriters conducted proper due diligence, whether the Individual Defendants and Riverstone Defendants were control person liable under Section 15, whether negative causation bars damages, etc.

at *7 (N.D. Cal. Aug. 20, 2021) ("Defendants' assertion that investors had actual knowledge of the alleged misrepresentations and omissions based on these media reports also can be resolved on a class-wide basis."); *Maez v. Springs Auto. Grp., LLC*, 268 F.R.D. 391, 397 (D. Colo. 2010) ("[I]f the liability issue is common to the class, common questions are held to predominate over individual questions.").

*Second*, Defendants have not produced evidence, as they must, that would elevate their actual knowledge defense past the point of conjecture for even a single class member. Because inquiry notice is subject to class-wide proof, Defendants cannot rely on inquiry notice to defeat class certification but instead are required provide evidence that class members had actual knowledge of the misrepresentations in the Registration Statement at the time they purchased Liberty stock. *Staehr v. Hartford Fin. Servs. Grp.,* 547 F.3d 406, 427 (2d Cir. 2008) (inquiry notice "is assessed under an objective standard […] It is therefore beyond cavil that resolution of this question can be achieved through generalized proof").

While Defendants repeatedly assert that institutional investors "would have" read publicly-available information about the state of the fracking industry at the time of the IPO and during the class period, Defendant' assertion is not proof that any investor *actually did read* the relevant public information. Nor is it proof of what conclusions investors drew from the articles in the context of other publicly-available information, including Liberty's explicit warning in the Registration Statement that investors should not rely on information beyond what's in the Registration Statement.[4] *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.,* 2011 WL

---

[4] *See* Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint"). ECF No. 89 at ¶71. Defendants' expert also admitted that around the time of the

3874821, at *6-7 n.1 (S.D.N.Y. 2011) (noting that in cases where defendants met their burden to establish actual knowledge, defendants provided explicit evidence, such as testimony or emails, *directly showing* that certain prospective class members had knowledge of the alleged misrepresentations). An investor's sophistication is also not proof that it had actual knowledge that the Registration Statement contained materially false statements and omissions. *Pub. Emp'ee Retirement Sys. v. Goldman Sachs Group, Inc.,* 280 F.R.D. 130, 137 (S.D.N.Y. 2012) ("sophistication is not sufficient on its own to find that questions of individual investor knowledge predominate over common issues"); *Weiss v. Blech*, 95 Civ. 6422, 1997 WL 458678, at *4 (S.D.N.Y. Aug. 11, 1997) ("[S]ophistication in general says nothing about [plaintiff's] actual knowledge."); *In re Facebook, Inc. IPO Sec. and Derivs. Litig.,* 312 F.R.D. 332, 348 (S.D.N.Y. 2015) ("whether any investor, institutional or retail, gained relevant actual knowledge from media reports precluding their claim presents another common question as to whether the relevant media reports conveyed all of the truth Plaintiffs allege was misstated or omitted.").

Additionally, for Defendants to prove their affirmative knowledge defense, they must establish that the publicly-available information could have given an investor an accurate and *complete* picture of supply and demand in the fracking industry *and* Liberty's pricing, the latter of which is a company-specific fact. Defendants' focus on public disclosures of supply and demand in the fracking industry as a whole ignores Plaintiffs' allegation that the Registration Statement falsely stated that Liberty was experiencing price increases. None of the publicly-available information that Defendant cite mentioned that Liberty was reducing prices and giving

---

IPO and during the class period, public information reflected "differing perspectives" and there was a "dispersion of opinions." Class Certification Expert Report of Lucy P. Allen ("Allen Report"). ECF No. 116-2 at ¶¶ 25-26.

discounts at the time of the IPO; this is a company-specific fact that Plaintiffs learned only through interviews with former Liberty employees. Indeed, in denying Defendants' motion to dismiss, the Court specifically referenced the former employee testimonies as the reason for upholding Plaintiffs' allegation about Liberty's pricing.[5] The absence of this information in the public domain during the class period is fatal to Defendants' affirmative defense of investor knowledge. *See In re LendingClub Sec. Litig.,* 282 F. Supp. 3d 1171, 1184 (N.D. Cal. 2017) ("even if certain investors were aware of one omitted piece of information, this does not show that they knew of …any of the other issues raised in the [complaint]."). While Defendants point to disclosures starting in November 2018 about prices "softening" at Liberty, this is irrelevant to whether class members were misled at the time of the IPO or during the modified class period ending on July 11, 2018.[6]

**Third**, even if, *arguendo*, Defendants proved that all of the "over 250" institutional investors that Defendants identified as having filed Form 13-Fs showing holdings in Liberty stock had actual knowledge that the Registration Statement contained the alleged misrepresentations and omissions (and Defendants have not come close to doing so), that is still

---

[5] *See* Order on Defendants' Motion to Dismiss. ECF No. 80 at p. 12 ("Plaintiff next point to Liberty Oilfield's statement in its prospectus that "[w]e are currently experiencing price increases…" Plaintiff claims that this statement is false because at the time of the IPO, Liberty Oilfield's prices were actually decreasing. The complaint alleges that former employees confirmed the company was lowering prices, giving discounts, and asking its suppliers to lower prices.")

[6] Public information about oversupply in the fracking industry generally does not reveal anything about pricing at Liberty. Indeed, in the Registration Statement Liberty sought to differentiate itself from its peers by stating that while other frac companies were downsizing, Liberty was increasing headcount. Complaint at ¶67. To the extent that Defendants argue that information about oversupply in the fracking industry should have led investors to deduce that Liberty was cutting prices, that question is subject to generalized, class-wide proof: either that conclusion can be drawn from available information or it cannot be drawn from available information.

insufficient to defeat class certification. *See In re Facebook,* 312 F.R.D. at 330 (holding that even if 295 investors require individualized inquiries, that does not defeat predominance in a potential class of thousands of investors.). Here, over 14.3 million shares were sold in the IPO, and the class is likely to number in the thousands. Under recent Supreme Court precedent, class certification should not be denied on the basis that a small number of class members might lose an affirmative defense. *Halliburton Co. v. Erica P. John Fund, Inc.* 573 U.S. 258, 276 (2014) ("That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate.").

Defendants' cases are distinguishable. In *New Jersey Carpenters Health Fund v. Rali Series 2006-QO1 Tr.,* 477 F. App'x 809 (2d Cir. 2012), the Second Circuit affirmed on an abuse of discretion basis a series of class certification orders issued by Judge Baer of the Southern District of New York; yet, following the appeal and on renewed motions for class certification, Judge Baer reversed course and found that class-wide issues did in fact predominate. *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 08 CV 8781 HB, 2012 WL 4865174, at *3 (S.D.N.Y. Oct. 15, 2012), *modified in part*, 288 F.R.D. 290 (S.D.N.Y. 2013) (granting class certification). Taking a hint from the appellate decision, Judge Baer wrote, "I am mindful of the Second Circuit's comment, 'Perhaps another inference could have been drawn, and perhaps a different inference might be drawn on a renewed motion on a fuller record.' … I am persuaded that Defendants' affirmative defenses [of knowledge] may not be as individualized as I had previously concluded." *Id.*

Regarding further renewed class certification motions in the same case, Judge Baer also unequivocally held that "publicly available news stories do not create individualized

knowledge," *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 08 CV 8781 HB, 2013 WL 6839093, at \*4 (S.D.N.Y. Dec. 27, 2013), and that "even assuming that the news reports provided some knowledge to investors, this information is 'subject to generalized proof.'" *Id.*, 2013 WL 6839093, at \*4.

Defendants' reliance on *Vignola v. Fat Brands, Inc.,* 2020 WL 1934976 (C.D. Cal. Mar. 13, 2020) is misplaced for several reasons. First, *Vignola* is a case in which the availability of information was binary - a story either uncovered the information or it did not. In *Vignola*, the "very" information the plaintiffs alleged was omitted had been previously reported, namely the binary ("yes/no") fact of the company's delisting. Here, there was no exact match between the misrepresentation and publicly-available information, as Defendants point to no public disclosures that revealed the company-specific fact that Liberty was reducing prices at the time of the IPO. Second, *Vignola* is a case brought under Section 12(a)(2) of the Securities Act. Under Section 11, investor knowledge is an affirmative defense; under Section 12(a)(2), however, the absence of the investor's knowledge an element of the plaintiff's claim. *Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 2013 WL 3284118, at \*13 (S.D.N.Y. June 28, 2013). Therefore, the plaintiffs in *Vignola* had a burden of proof (of the lack of knowledge) that Plaintiffs here do not.

Lastly, *In re Kosmos Energy Ltd. Sec. Litig.,* 299 F.R.D. 133 (N.D. Tex.) is unpersuasive because all the information that the plaintiffs allege to have been misrepresented was publicly disclosed, including through disclosures made by the company itself. Moreover, *Kosmos* relies on Judge Baer's decision in *Residential Capital* for its findings as to predominance - which Judge Baer himself reversed course on.

**B. Whether the Statute of Limitations Bars Plaintiffs' Claim does not Defeat Predominance**

Defendants' statute of limitations arguments are closely related to, and a rehashing, of their arguments regarding the knowledge affirmative defense. For the statute of limitations to apply, investors would need to have had either inquiry or actual notice of the alleged misrepresentations. As discussed *supra*, inquiry notice is assessed under an objective standard and subject to generalized (*i.e.* class-wide) proof. Defendants appear to recognize this. *See* Def. Br. at 14, n. 6.  Indeed, the public sources in question either were sufficient to put any reasonable investor on notice, or they were not. This defense is susceptible to generalized proof and cannot defeat predominance.

Defendants therefore must show that class members had actual knowledge of the full extent of the misstatements and omissions in Liberty's Registration Statement. As discussed *supra* in the section regarding knowledge, Defendants have not made that showing. Publicly-available information at the time of the IPO and during the class period did not reveal that Liberty was decreasing prices, and post-class period disclosures beginning in November 2018 about Liberty's prices softening were about conditions and pricing at those specific points in time – not about conditions and pricing at the time of the IPO. Plaintiffs' Complaint alleges that the Registration Statement made misrepresentations about conditions and pricing at the time of the IPO, not eleven months after the IPO. Whether an investor had knowledge of industry oversupply and pricing decreases at Liberty in or after November 2018 is irrelevant to the statute of limitations and does not defeat predominance.

The cases Defendants cite are inapposite. In *Thorn v. Jefferson-Pilot Life Ins. Co.,* 445 F.3d 311 (4th Cir. 2006), the class members indisputably had actual knowledge – for decades.

*Thorn* concerned allegations that an insurance company discriminated against African Americans by charging them higher interest rates for 27 to 89 years before the case was filed. The defendant proffered evidence showing not only that the dual rate practice was widely disseminated in the media "over the course of the twentieth century," but also submitted specific evidence that the African American community (*i.e.* the prospective class members) had raised objections to the dual rate structure "through the middle part of the century" and that African Americans had formed their own insurance companies "early in the century" to avoid the dual rates. *Id.* at 316. *Johnson v. Kansas City S. Ry. Co.,* 208 F. App'x 292 (5th Cir. 2006) is distinguishable because there the court found that on the whole, there were numerous individualized issues, including "deed interpretation and center-line theory," that predominate over common ones. *Miller v. Farmers Ins. Grp.* 2012 WL 8017244 (W.D. Okla. Mar. 22, 2012) is inapposite because actual knowledge there is beyond dispute, as the defendant – an insurance company's – own agents disclosed the alleged misconduct to the insured.

### C. Damages in Securities Act Claims are Calculated based on a Statutory Formula and Differences in Damage Awards Do Not Defeat Class Certification

The Securities Act presents a uniform, statutory formula for calculating damages. 15 U.S.C. §77(e). This statutory formula is applied to all class members. *In re Oppenheimer,* 318 F.R.D. at 447 ("The calculation of damages is common to the Class…because Securities Act damages are calculated using a statutory formula, the means of determining them therefore would be common to all class members."). The Supreme Court's decision in *Comcast Corp. v. Behrend,* 569 U.S. 27 (2013) did not change the analysis for Securities Act cases. *See In re Facebook,* 312 F.R.D. at 350 ("*Comcast* does not bar certification here, where Section 11(e) of the Securities Act provides a statutory formula for damages."); *N.J. Carpenters Health Fund,*

2013 WL 5839093, at *5 (holding that *Comcast* was "inapposite here, where damages reflect liability by statutory formula.").

To the extent that there are investors who purchased in the IPO but did not suffer damages, they are specifically excluded from the class under Plaintiffs' proposed class definition. Contrary to Defendants' assertion that the presence of investors with no damages defeats class certification, it is commonplace in securities class actions to have investors with no damages, and those investors are typically excluded from the class. *In re Symbol Techs. Inc. Sec. Litig.,* 2015 WL 3915477, at *9 (E.D.N.Y. June 25, 2015) (granting class certification where "those that purchased Symbol common stock during the class period" were "damaged thereby," and excluding traders who were not damaged); *In re Bank of Am. Corp. Sec. Derivs. & ERISA Litig.,* 281 F.R.D. 134, 148 (class definition acceptable because it includes only those investors who were "damaged"). And if an investor with no damages files a claim anyway, he or she will not receive a payment under the plan of allocation that will be formulated to determine each eligible class member's *pro rata* recovery.

Defendants' contention that investors who purchased IPO and non-IPO shares would not know how to calculate damages is another manufactured controversy. First, Plaintiffs have agreed to end the class period on July 11, 2018. Any shares purchased prior to July 11, 2018 - the date that the lock-up period expired – are IPO shares because only IPO shares were available for trading before July 11, 2018. Second, where a class member has a number of purchases and sales that must be matched, courts generally accept one of two techniques to calculate loss: "first in, first out (FIFO)" or "last in, first out (LIFO)." *In re Vivendi Universal, S.A. Sec. Litig.,* 284 F.R.D. 144, 159 (S.D.N.Y. 2012). The Court can decide which method to employ after trial as

14

part of the claims administration process. Plaintiffs are not aware of – and Defendants have not identified any – instances where courts denied class certification in Securities Act cases simply because there may be individualized questions as to damages. The contrary is true: courts routinely certify Securities Act classes even when there are individual questions regarding damages. *Sudunagunta v. NantKwest, Inc.,* 2018 WL 3917865, at *8 (C.D. Cal., Aug. 13, 2018) (nothing that damages under Section 11 are "statutory and mechanical," and holding that "to the extent individual calculations are necessary…the need for individual damages calculations does not, alone, defeat class certification."); *In re IndyMac,* 286 F.R.D. at 235 ("damages in Securities Act cases are calculated based on a statutory formula, so "any differences in damages awards do not defeat class certification[.]").

## III. CONCLUSION

Plaintiffs respectfully requests that the Court grant their motion to certify the class, with the class period modified to end on July 11, 2018.[7]

Dated: February 28, 2022                    Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**
                                            */s/ Laurence Rosen*
                                            Laurence Rosen
                                            Yu Shi
                                            275 Madison Ave, 40th Floor
                                            New York, NY 10016
                                            Tel: (212) 686-1060
                                            Email: lrosen@rosenlegal.com
                                                   yshi@rosenlegal.com

                                            *Counsel for Plaintiffs and the Proposed Class*

---

[7] A revised proposed order reflecting this modification is submitted herewith.

# CERTIFICATE OF SERVICE

I, Laurence Rosen, an attorney, hereby certify that on February 28, 2022, I caused a true and correct copy of the foregoing "PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION" to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 28, 2022.

*/s/Laurence Rosen*
Laurence Rosen

16