# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-CV-00946-RM-NYW

CIPRIANO CORREA et al., Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

LIBERTY OILFIELD SERVICES INC., et al.,

    Defendants.

---

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

Lead Plaintiff Cipriano Correa ("Correa") and Named Plaintiff Marc Joseph ("Joseph" collectively, "Plaintiffs") hereby move this Court,[1] pursuant to Fed. R. Civ. P. 23, for an order: (i) preliminarily approving the proposed Settlement, including the Plan of Allocation (the "Plan"); (ii) certifying the proposed Settlement Class for settlement purposes only; (iii) approving the form and manner of providing notice of the Settlement to the Settlement Class; and (iv) scheduling a hearing to consider final approval of the Settlement and approval of the Plan and Lead Counsel's motion for attorneys' fees and reimbursement of expenses and a contribution award to Plaintiffs.

The Settlement was achieved only after substantial arm's-length negotiations with the aid of an experienced and respected mediator, Robert A. Meyer of JAMS. This cash settlement

---

[1] Pursuant to D.C.COLO.LCivR 7.1(a), Plaintiffs certify that Defendants do not oppose this motion. Unless otherwise indicated, all capitalized terms have the same meanings as set forth in the Stipulation of Settlement, dated May 9, 2022 (the "Stipulation").

1

provides an immediate and guaranteed recovery for the Settlement Class, a favorable result in light of significant obstacles that Plaintiffs face in proving liability and damages. Plaintiffs believe that the proposed Settlement is fair, reasonable, and adequate, and is in the Settlement Class's best interest. Similarly, the proposed content and manner of providing notice satisfies requirements imposed by Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process.

## I.   SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.  Procedural History

Joseph commenced this Action on April 3, 2020, filing a complaint alleging claims under §§11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act"). On August 7, 2020, the Court appointed Correa as Lead Plaintiff and The Rosen Law Firm, P.A. as Lead Counsel.

On August 31, 2020, Correa filed the Amended Class Action Complaint For Violations of the Federal Securities Laws ("Complaint"). In response, on September 14, 2020, Defendants filed their letter expressing their intention to move to dismiss the Complaint. Correa filed a letter in response on September 22, 2020. On October 8, 2020, Defendants filed their motion to dismiss the Complaint, which was fully briefed on December 16, 2020. On July 12, 2021, the Court denied the motion to dismiss in part as to the §§11 and 15 claims and granted the motion as to the §12(a)(2) claim. On August 25, 2021, Defendants filed their answers to the Complaint.

On October 7, 2021, the Parties entered into a stipulation to amend the Complaint to add Joseph as a named plaintiff, which the Court granted on October 12, 2021. On October 13, 2021, Plaintiffs filed the operative Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint"). The parties agreed and the Court ordered that

2

Defendants' answers to the Complaint would be deemed to be their answers to the Amended Complaint.

On October 26, 2021, the Action was reassigned from Judge R. Brooke Jackson to Judge Raymond P. Moore for all further proceedings. On October 29, 2021, Magistrate Judge Nina Y. Wang was assigned to the case.

On November 1, 2021, Plaintiffs filed a motion for class certification, which was fully briefed by the parties as of February 28, 2022.

### B.  Settlement Negotiations

The Parties began discussing a potential mediation to resolve the Action in the fall of 2021. On February 11, 2022, Plaintiffs, Liberty, the Individual Defendants, and the Riverstone Defendants participated in a full-day mediation with Mr. Meyer of JAMS. Prior to the mediation session, the Parties exchanged detailed mediation statements outlining their positions on liability and damages. While the Parties did not reach an agreement at the mediation, they continued negotiations in the weeks following the mediation with Mr. Meyer's continued assistance, culminating in Mr. Meyer's issuing a "mediator's proposal," which the Parties accepted on February 28, 2022.

### II.    THE PROPOSED SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED FOR SETTLEMENT PURPOSES ONLY

In granting preliminary settlement approval, the Court should also preliminarily certify the Settlement Class for purposes of the Settlement only under Fed. R. Civ. P. 23(a) and (b)(3). Courts in this Circuit have consistently certified class actions in securities cases to provide redress for injured investors. *See, e.g., City P'ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 581 (D. Colo. 2002) (certifying class, noting "securities claims are particularly well suited for class action status

3

because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation."); *Schwartz v. Celestial Seasonings,* 178 F.R.D. 545, 550 (D. Colo. 1998) ("In general, class actions are favored in securities…actions involving numerous plaintiffs."). The proposed Settlement Class, to which the Parties have stipulated, consists of all persons and entities who purchased or otherwise acquired publicly traded Liberty common stock either in or traceable to Liberty's January 11, 2018 initial public offering ("IPO") through April 3, 2020, inclusive.[2]

### A.       Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires the class to be "so numerous that joinder of all class members is impracticable." A securities class of hundreds of purchasers or more is assumed to satisfy the numerosity requirement. *In re Ribozyme Pharm., Inc. Sec. Litig*., 205 F.R.D. 572, 577-8 (D. Colo. 2001). Accordingly, the numerosity requirement is assumed to be satisfied in cases involving a nationally traded security. *Schwartz*, 178 F.R.D. at 550; *In re Molycorp, Inc. Sec. Litig.*, No. 12-CV-00292-RM-KMT, 2017 WL 4333997, at \*5 (D. Colo. Feb. 15, 2017), *report and recommendation adopted,* No. 12-CV-00292-RM-KMT, 2017 WL 4333998 (D. Colo. Mar. 6, 2017); *McEwen v. Digitran Sys*., 160 F.R.D. 631, 636 (D. Utah 1994). Liberty common stock was listed on the NYSE during the Class Period with 14.3 million shares sold during the IPO.

---

[2] Excluded from the Settlement Class are: (i) persons who suffered no compensable losses, (ii) Defendants; (iii) members of the immediate family of any Individual Defendant; (iv) any person who was an officer or director of Liberty or the Riverstone Defendants during the Class Period; (v) any entity in which any such excluded party has a direct or indirect majority ownership interest; (vi) the legal representatives, heirs, successors-in-interest or assigns of any such excluded persons or entities; and (vii) Persons who submit valid and timely requests for exclusion from the Settlement Class in such form and manner, and within such time, as the Court shall prescribe. Stipulation ¶1.31.

Considering there are likely hundreds, if not thousands, of potential Settlement Class Members, numerosity is easily met.

### B.    Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[E]ven a single [common] question" of law or fact will suffice to establish commonality. *Nakkhumpun v. Taylor*, 2015 WL 6689399, at *4 (D. Colo. Nov. 3, 2015). The claims of the potential class members need not be factually identical. *Schwartz,* 178 F.R.D. at 551. Here, Plaintiffs allege that Defendants made uniform misrepresentations and omissions to the investing public through the Registration Statement that artificially inflated the market price for Liberty stock. Thus, virtually all of the questions of law or fact at issue are common to Plaintiffs and all other purchasers of Liberty stock in the Class Period including: (1) whether Defendants violated the Securities Act; (2) whether the Registration Statement made material misrepresentations or failed to disclose material facts required to be disclosed therein; and (3) the extent of, and appropriate measure of, damages. These are quintessential questions regularly found to be "common questions of law or fact" in securities actions. *Schwartz,* 178 F.R.D. at 551. Courts in this District have found that similar questions of law and fact meet the commonality requirement. *Ribozyme*, 205 F.R.D. at 579; *Molycorp,* 2017 WL 4333997, at *6; *In re Crocs, Inc. Sec. Litig*., 2013 WL 4547404, at *11 (D. Colo. Aug. 28, 2013).

### C.    Typicality – Rule 23(a)(3)

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). "So long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or

law which unite the class, the typicality requirement is satisfied." *Schwartz,* 178 F.R.D. at 551. Moreover, the "positions of the named plaintiffs and the potential class members do not have to be identical." *Oppenheimer*, 318 F.R.D. at 444 Here, Plaintiffs' claims are typical of, if not identical to, the claims of the other Settlement Class Members. Plaintiffs allege that: (1) Defendants violated the Securities Act by issuing the Registration Statement that misrepresented and omitted material facts; and (2) the Settlement Class suffered losses as a result of purchasing Liberty stock in the Class Period. These claims are based upon the same facts and legal theories, and would be proven with the same evidence. Further, Plaintiffs are not subject to any unique defenses that would make them atypical.  Thus, typicality is satisfied.

### D.    Adequacy – Rule 23(a)(4)

Under Rule 23(a)(4), Plaintiffs' adequacy is based on: (1) whether they have common interests with the unnamed members of the class; and (2) whether it appear that the representatives will vigorously prosecute the interest of the class through qualified counsel. *Ribozyme,* 205 F.R.D. at 578; *Schwartz,* 178 F.R.D. at 552. "[O]nly a conflict that that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Tennille v. Western Union Co.,* 785 F.3d 422, 430 (10th Cir. 2015).

Plaintiffs' interests are aligned with those of the Settlement Class. Plaintiffs purchases Liberty common stock in the Class Period and sustained losses as a result of the same alleged material misrepresentations and omissions as other Settlement Class Members. Plaintiffs in this litigation have the same objectives as other members of the Settlement Class – to seek recovery of damages suffered as a result of the alleged misrepresentations in Liberty's Registration Statement.

As to the adequacy of Lead Counsel, the Court must consider "(i) the work counsel has

done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel has been involved in this action from inception, vigorously litigating on behalf of Liberty investors including: conducting a pre-filing investigation; filing an initial complaint; retaining and supervising an investigator to conduct interviews with relevant witnesses; reviewing public documents concerning Liberty and the fracking industry; drafting a detailed amended complaint; retaining an economic expert to assess damages; responding to Defendants' pre-motion letter; briefing and defeating Defendants' motion to dismiss; drafting discovery requests and reviewing documents produced; responding to Defendants' written discovery requests including requests for production and interrogatories; filing a motion for class certification; deposing Defendants' class certification expert; participating in a mediation as well as lengthy settlement discussions following the mediation; formalizing the settlement; and filing the instant motion for preliminary approval. Lead Counsel are experienced securities class action attorneys capable of evaluating cases to determine when a settlement would be beneficial to the class, and when to continue litigating. Courts around the country have consistently found Lead Counsel to be well-suited as class counsel in securities class actions. *See* Dkt. No. 100-2 (Firm Resume); *see also Yedlowski v. Roka Bioscience, Inc.,* 2016 WL 6661336, at \*21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"); *Knox v. Yingli Green Energy Holding Co. Ltd*., 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"). Thus, the adequacy requirement is satisfied.

### E.  Predominance and Superiority – Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if the Court finds that "(i) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). *see also Ribozyme,* 205 F.R.D. at 578. Both requirements are satisfied here.

**Predominance:** Predominance is "readily met" in cases asserting violations of the securities laws. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 689 (D. Colo. 2014) (noting defendants' material misrepresentations and omissions predominate as they are "unaffected by the particularized conduct of individual class members."). Plaintiffs allege Defendants made material misrepresentations and omissions in Liberty's Registration Statement, artificially inflating Liberty's stock price in violation of the Securities Act. The issues of law and fact that flow from this course of conduct predominate over any individual issues. *Ribozyme,* 205 F.R.D. at 578-79 (common issues predominate where the question of defendants' liability is common to all class members). Where, as here, Plaintiffs "allege a common nucleus of misrepresentations, material omissions, [or] market manipulation the common questions predominate over any differences between individual class members with respect to damages, causation, and reliance." *In re United Telecommunications, Inc., Sec. Litig.*, No. CIV. A. 90-2251-O, 1992 WL 309884, at *3 (D. Kan. Sept. 15, 1992).

**Superiority:** The class action mechanism is the superior method for resolving this Action as courts routinely find superiority satisfied where: (i) many in the class of investors likely suffered small losses, making it impracticable to proceed with their claims as individuals; (ii) use of the

class vehicle will achieve judicial economy, as well as prevent inconsistent judgments; and (iii) there are not other actions against the company involving the same claims, and the court foresees no particular difficulties with adjudicating the class action.[3] *See, e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) (class action mechanism allows plaintiffs to pool claims that would otherwise be uneconomical to litigate individually). Indeed, it is well recognized that class actions are a particularly appropriate means for resolving securities actions. *Basic Inc. v. Levinson,* 485 U.S. 224, 250 (1988) (a class action is the most favorable means of adjudicating securities claims).

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The Tenth Circuit has long acknowledged a strong public policy and presumption favoring settlements. *Am. Home Assurance Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977) (noting that "[t]he inveterate policy of the law is to encourage, promote and sustain the compromise and settlement of disputed claims"). Settling is particularly favored in complex class actions, such as this one, "where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014).

Where, as here, the parties propose to resolve a class action litigation through a class-wide settlement, they must seek the Court's approval. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the

---

[3] The related case pending in the District Court of Denver County, Colorado, captioned *Marshall Cobb v. Liberty Oilfield Services Inc., et al.,* No. 2020-cv-30983 (the "State Court Action"), does not preclude class certification here. There is no certified class in the State Court Action, and because the State Court Action is brought on behalf of the same putative class of Liberty investors and alleges similar claims as the Settlement Class here, resolution of this Action would also resolve the class claims in the State Court Action. There is no risk of inconsistent rulings.

proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

To assess if a settlement is fair, reasonable, and adequate, the Tenth Circuit looks to: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable" *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). In addition, courts must evaluate the additional factors of Rule 23(e)(2), which are:

> (2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-CV-0304-WJM-NRN, 2021 WL 1387110, at *3 (D. Colo. Apr. 13, 2021). Considering the substantial overlap of these considerations, "a court considers the Rule 23(e)(2) factors as the main tool in evaluating the propriety of the settlement but still addresses the Tenth Circuit's factors." *Id.* (finding only the fourth factor not subsumed into the new Rule 23 factors). A settlement should be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Rhodes v. Olson Assocs.,*

10

*P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015). As summarized below, and as will be detailed further in a motion for final approval of the Settlement, all factors are met.

### A.      Plaintiffs and Lead Counsel Are Adequate Representatives

As detailed in Section II *supra*, Plaintiffs and Lead Counsel have adequately represented the Settlement Class throughout the litigation and settlement of this Action. Plaintiffs' interest in obtaining the largest-possible recovery in this Action is firmly aligned with all Settlement Class Members. *Molycorp,* 2017 WL 4333997, at *7. Plaintiffs also retained highly experienced securities class action practitioners with a successful track record of representing investors in similar cases. Lead Counsel vigorously prosecuted the Settlement Class's claims and expended significant time and effort throughout the litigation. The adequacy requirement is thus satisfied.

### B.      The Settlement is the Product of Informed, Arm's-Length Negotiations

A proposed settlement is presumed is fair and reasonable where the settlement "resulted from arm's length negotiations between experienced counsel." *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006). Moreover, "[u]tilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved." *Suaverdez v. Circle K Stores, Inc.*, No. 20-CV-01035-RM-NYW, 2021 WL 4947238, at *7 (D. Colo. June 28, 2021), *report and recommendation adopted,* No. 120CV01035RMRNYW, 2021 WL 5513740 (D. Colo. Oct. 19, 2021)(citing *Molycorp*, 2017 WL 4333997, at *4).

Here, the Parties attended a mediation with Robert A. Meyer of JAMS, a well-respected mediator with extensive experience mediating complex securities class actions. In advance of this session, mediation statements were exchanged addressing liability and damages. The mediation

11

session ended without an agreement, but over the following weeks, Mr. Meyer facilitated further

discussions and advanced a mediator's proposal which the Parties accepted. Courts around the

country regularly find Mr. Meyer's involvement in settlement negotiations supports a settlement's

fairness.[4]

### C. The Relief Provided to the Settlement Class is Adequate

#### 1. The Costs, Risks, and Delay of Trial and Appeal

In assessing the Settlement, the Court should balance the benefits of the certain and

immediate recovery for the Class against the risks of continued litigation. *Lucas*, 234 F.R.D. at 694.

With prolonged litigation, "the parties would be without the guarantee of receiving even a dollar

if this suit were to be resolved at a later time." *Lane v. Page*, 862 F. Supp. 2d 1182, 1249 (D.N.M.

2012). At the time the Settlement was reached, there was no guarantee that Plaintiffs' class

certification motion would have been granted. Although Plaintiffs believe their motion would be

meritorious, in light of Defendants' arguments, certification was hardly guaranteed.

Further, even if Plaintiffs prevail on class certification, they would still have to survive

anticipated motions for summary judgment and if successful, prove their claims at trial. Defendants

continued to deny all of Plaintiffs' allegations and presented strong arguments against falsity,

materiality, and damages. For instance, Defendants would continue to argue that trends in the

fracking industry were publicly known at the time of the IPO, that Liberty's stock price tracked

the stock prices of peer companies, thus any decline in Liberty's stock price was due to industry-

wide, macroeconomic conditions rather than any misconduct on the part of Liberty. Moreover,

---

[4] *See e.g., In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *8 (E.D.N.Y. Jan. 21, 2022); *Antonio Hurtado v. Rainbow Disposal Co.*, No. 817CV01605JLSDFM, 2021 WL 79350, at *5 (C.D. Cal. Jan. 4, 2021); *Cheng Jiangchen v. Rentech, Inc.,* No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019).

Defendants would continue to assert that the claims brought in the litigation are time barred.

Indeed, Defendants have compelling arguments that could eliminate damages. The maximum damages potentially recoverable in this case is $101 million, but that is Plaintiffs' best-case scenario assuming Plaintiffs' defeat all of Defendants' negative causation arguments. However, Plaintiffs are cognizant that there are strong facts supporting negative causation, including the lack of statistically-significant stock drops following each revelation of allegedly misrepresented information. Were Defendants' negative causation arguments to succeed, damages would be reduced to zero, effectively ending Plaintiffs' case. Given this considerable risk, the Settlement – which confers a guaranteed and immediate payment of $3.9 million for the benefit of the Settlement Class - is a favorable result. Moreover, this 3.9% recovery of the Settlement Class's best-case, maximum damages is within the range of approved recoveries in securities class actions. In 2021, securities class actions settled for a median recovery of 1.8% of damages.[5] This Settlement is reasonable especially in light of the substantial risk that Plaintiffs might recover nothing absent a settlement, *See e.g., City of Detroit v. Grinnell Corp*., 495 F.2d 448, 455 n.2 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000) ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc*., 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair");

---

[5] Janeen McIntosh and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review (NERA Jan. 25, 2022) at p. 24 (Fig. 22). Available at: https://www.nera.com/content/dam/nera/publications/2022/PUB_2021_Full-Year_Trends_012022.pdf (Last Accessed: May 13, 2022).

13

*Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ. 3024, 1990 WL 73423, at \*12-13 (E.D.N.Y. May 12, 1990) (approving settlement which amounted to 1.9% of maximum damages).

Given the Action's many uncertainties and risks, the "value of immediate recovery outweighs the mere possibility of future relief." *Lane*, 862 F. Supp. 2d at 1249; *Crocs,* 2013 WL 4547404, at \*11 (preliminary approval where plaintiffs "had to consider the likelihood of success certifying a class, surviving summary judgment, and winning at trial").

### 2.    Other Factors Established by Rule 23(e)(2)(C) Support Approval

Under Rule 23(e)(2)(C), courts consider whether the settlement relief is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports preliminary approval.

### a)  The Method of Distributing Relief and Processing Claims

As demonstrated in Section IV *infra*, the method for distributing relief to eligible claimants and for processing Settlement Class Members' claims includes standard and effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Plaintiffs request that the Court appoint Strategic Claims Services ("SCS") as Claims Administrator. SCS has substantial experience administering securities settlements. If SCS is appointed it will, under Lead Counsel's guidance, process claims, allow Claimants an opportunity to cure any deficiencies or request the Court to review a denial of their Claim(s), and pay Authorized Claimants their pro rata share of the Net Settlement Fund pursuant to the Plan of Allocation (the "Plan") set forth in the Long Notice.

### b) Proposed Attorneys' Fees

The Notice explains that Lead Counsel will apply for attorneys' fees not to exceed one-third of the Settlement Amount and to recover litigation expenses in an amount not to exceed $65,000. A request for attorneys' fees of one-third of the settlement amount is reasonable in light of the work performed and the results obtained, and is well within the range of percentage fees that are regularly awarded in securities class actions and contingency fee class actions in the Tenth Circuit.[6]

### c) Other Agreements

The Parties executed a standard supplemental agreement providing that if Settlement Class Members opt out such that the number of shares held by those persons opting out reaches a certain threshold, Defendants may terminate the Settlement. Stipulation ¶2.12. The terms of the Supplemental Agreement are kept confidential to avoid incentivizing investors to opt out solely to leverage the threshold to exact an individual settlement. *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage

---

[6] *See*, *Circle K Stores,* 2021 WL 4947238, at *8 ("one-third of the total settlement amount … is commonly found reasonable in class settlement."); *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2014 WL 4670886, at *3 (D. Colo. Sept. 18, 2014) ("Courts in the Tenth Circuit have noted that the typical fee award in complex cases is around one third of the common fund."); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.,* 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class"); *Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-TLW, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) ("[T]he Court notes that contingent fees in the range of one-third of a common fund are frequently awarded in Rule 23 class settlements."); *Elston v. Horizon Glob. Americas, Inc.*, No. CV 19-2070-KHV, 2020 WL 6318660, at *7 (D. Kan. Oct. 28, 2020) ("When the proposed settlement creates a common fund, "attorneys' fees of one-third or thereabouts are generally deemed reasonable.").

third parties from soliciting class members to opt out."); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.").

### D.      All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Settlement Class Member, including Plaintiffs. The Plan, as set out in the Long Notice, provides for distribution of the Net Settlement Fund to Authorized Claimants on a *pro rata* basis who suffered losses on their transactions in Liberty common stock during the Class Period, based on when each investor purchased, acquired, and/or sold shares of Liberty common stock. The Plan's formula for calculating recognized losses is the same for all Settlement Class Members. The Plan was developed by Lead Counsel after consulting with the Claims Administrator and Plaintiffs' damages expert. *DaVita*, 2021 WL 1387110, at *5 (finding equitable treatment as "[t]he settlement fund will be allocated to authorized claimants on a *pro rata* basis based on the relative size of their recognized claims."). Plaintiffs will also seek reimbursement of costs they incurred representing the Settlement class, as authorized by the PSLRA. *Id*., at *7 (awarding plaintiffs $10,000 each for PSLRA awards); *Circle K Stores,* 2021 WL 4947238, at *9 (service award to plaintiff "is typical in class action settlements.").

### E.      The Settlement is Reasonable Considering the Range of Possible Recoveries

Preliminary approval merely requires an initial fairness evaluation to ensure that the proposed Settlement "falls within the range of possible approval." *Rhodes,* 308 F.R.D. at 666. As

set forth above, the $3.9 million Settlement Amount is within the range of reasonableness to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class. Moreover, given the substantial risks in protracted litigation, the "immediate recovery outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery." *Crocs*, 2013 WL 4547404, at *12 In light of these significant risks of class certification, summary judgment and trial, the Proposed Settlement is within the range of reasonableness.

F.      **The Judgment of the Parties Favors Preliminary Approval of the Settlement**

Preliminary approval is merited here given that "it is evident that the Settling Parties believe that the Settlement Agreement is fair and reasonable." *Crocs*, 2013 WL 4547404, at *12. All Parties were represented by knowledgeable and experienced securities practitioners. That the Parties and their counsel agreed to the Settlement favors preliminary approval. *Nakkhumpun*, 2015 WL 6689399, at *6 ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight"). The Settlement is a product of informed, fair, and candid negotiations among sophisticated parties and experienced counsel, following extensive mediation negotiations, and is deserving of preliminary approval. *Id.* (settlement fair where parties conducted a factual investigation and thorough analysis, consulted with experts, and engaged in mediation, among other things); *Kmart Corp.*, 234 F.R.D. at 695 (court recognizing unanimous support of settlement by experienced complex class action litigation counsel).

IV.     **THE FORM AND METHOD OF THE NOTICE SHOULD BE APPROVED**

Class notice of a settlement must meet the requirements of Rules 23, the PSLRA, and due process. Notice must be "reasonably calculated, under all the circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections.'"

*Tennille v. Western Union Co*., 785 F.3d 422, 436 (10th Cir. 2015) quoting *Eisen v. Carlisle &*

*Jacquelin*, 417 U.S. 156, 174 (1974)). The question is not whether actual notice was provided to

all interested parties, but whether the notice is "the best notice practicable under the circumstances

including individual notice to all members who can be identified through reasonable effort." *Id*.

(quoting *Eisen,* 417 U.S. 173).

The proposed Notice program includes: (a) emailing the Summary Notice or links to the

Long Notice and Claim Form, or if no email address can be obtained, mailing the Postcard Notice,

to Settlement Class Members who can be identified with reasonable effort; (b) posting the Long

Notice, Claim Form, and Stipulation on a Settlement website maintained by SCS; (c) upon request,

mailing copies of the Long Notice and/or Claim Form; and (d) publishing the Summary Notice

over *GlobeNewswire*. Courts routinely find these methods of notice sufficient. "The use of a

combination of a mailed post card directing class members to a more detailed online notice has

been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig*., 298 F.R.D. 171, 183 n.3

(S.D.N.Y. 2014) (citing cases); *Baker v. SeaWorld Entm't, Inc*., No. 14CV2129-MMA (AGS),

2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar notice

program including website).

The Long Notice provides detailed information concerning: (a) the rights of Settlement

Class Members, including the manner in which objections can be lodged and how to request

exclusion from the Settlement (and clearly states that all those who do not exclude themselves will

be bound by the Settlement); (b) the nature, history, and progress of the litigation; (c) the proposed

Settlement; (d) how to file a Claim Form; (e) a description of the Plan; (f) the fees and expenses

18

to be sought by Lead Counsel and Plaintiffs; and (g) the necessary information to examine Court records. The Long Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Long Notice to those persons for whom the nominees held shares in "street name." This closely tracks a model notice published by the Federal Judicial Center.[7] Furthermore, the PSLRA-mandated disclosures are satisfied as the Long Notice: (a) states the amount of the Settlement on both an aggregate and average per share basis; (b) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (c) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (d) provides the contact information for Claims Administrator and Lead Counsel to answer questions from Settlement Class Members. 15 U.S.C. § 77-1(a)(7).

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The Notice informs Settlement Class Members that Lead Counsel will apply for attorneys' fees of up to one-third of the Settlement Amount, reimbursement of expenses of up to $65,000, and an award to Plaintiffs of up to $15,000, in total, all to be paid from the Settlement Fund. Accordingly, the Notice and the Notice program satisfy the requirements of the Federal Rules of Civil Procedure, the PSLRA, and due process.

## V.    PROPOSED SETTLEMENT SCHEDULE

The Parties respectfully propose the following schedule for the Court's consideration,

---

[7] *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*. Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

which is set forth in the proposed Preliminary Approval Order:

| Event | Deadline for Compliance |
|---|---|
| Emailing Summary Notice and/or mailing Postcard Notice; Creating Website with Stipulation, Long Notice, and Claim Form | No later than 28 calendar days after the entry of the Preliminary Approval Order (¶¶15, 17) |
| Dissemination of the Summary Notice | No later than 35 calendar days after entry of the Preliminary Approval Order (¶16) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses | No later than 28 calendar days prior to the Settlement Hearing. (¶30) |
| Submission deadline for Claim Forms, Requests for Exclusion and Objections | No later than 21 calendar days prior to the Settlement Hearing (¶¶21, 23, 27) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | 7 calendar days prior to the Settlement Hearing (¶31) |
| Dated for the Settlement Hearing | Approximately 130 days after entry of the Preliminary Approval Order |

## VI.     CONCLUSION

Plaintiffs respectfully request that the Court: preliminarily certify the Settlement Class;

preliminary approve the Settlement; approve the Notice Plan; and set a Settlement Hearing.

Dated: May 13, 2022                               Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
*/s/ Laurence Rosen*
Laurence Rosen
Yu Shi
275 Madison Ave, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Email: lrosen@rosenlegal.com
              yshi@rosenlegal.com
*Counsel for Plaintiffs and the Proposed Class*

20

## CERTIFICATE OF SERVICE

I, Laurence Rosen, an attorney, hereby certify that on May 13, 2022, I caused a true and correct copy of the foregoing "PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT" to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 13, 2022.

*/s/Laurence Rosen*
Laurence Rosen

21