IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-CV-00946-RM-NRN

CIPRIANO CORREA et al., Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

LIBERTY OILFIELD SERVICES INC., et al.,

    Defendants.

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

Lead Plaintiff Cipriano Correa ("Correa") and Named Plaintiff Marc Joseph ("Joseph" collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class,[1] respectfully move this Court, pursuant to Fed. R. Civ. P. 23, for entry of orders: (i) granting final approval of the Settlement; and (ii) approving the Plan of Allocation.[2]

**I.    PRELIMINARY STATEMENT**

Subject to this Court's approval, Plaintiffs have agreed to settle all claims in this Action against Defendants in exchange for a cash payment of $3.9 million. This is a favorable result for

---

[1] Unless otherwise indicated, all capitalized terms have the same meanings as set forth in the Stipulation of Settlement (the "Stipulation") (ECF No. 124).

[2] Pursuant to D.C.COLO.LCivR 7.1(a), Plaintiffs have conferred with Defendants regarding this motion, and are authorized to state that Defendants do not oppose the relief that Plaintiffs seek in this motion, but otherwise take no position on this motion.

1

the Settlement Class in light of the significant risks inherent in this litigation. If approved, this Settlement will completely dispose of the Action.

In addition to providing a meaningful, certain, and immediate monetary recovery for the Settlement Class, the Settlement avoids the substantial risks and expense of continued litigation. As discussed herein and in the accompanying Rosen Declaration,[3] Defendants have compelling arguments against liability and damages that could effectively end this case at summary judgment and leave the Settlement Class with no recovery.

Further litigation also would have resulted in considerable costs to both sides. At the time the Settlement was reached, the Parties were in the early stages of formal fact discovery. Had litigation continued, Plaintiffs would have incurred the significant costs of completing discovery, including the review and analysis of voluminous document productions and the taking of numerous fact and expert depositions. Moreover, given the complex issues involved in this case, the Parties would be required to rely heavily on experts in various disciplines, further adding to the costs of litigation.

Plaintiffs and Lead Counsel – who has extensive experience prosecuting securities class actions – believe that this Settlement is a favorable result and in the best interests of the Settlement Class. By the time the Settlement was reached, Plaintiffs had, among other things: (a) conducted a thorough factual investigation, including interviews of former Liberty employees and other

---

[3] The Declaration of Laurence Rosen ("Rosen Declaration" or "Rosen Decl."), filed herewith, is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation. All citations to "¶ __" and "Ex. __" in this motion refer, respectively, to paragraphs in, and exhibits to, the Rosen Declaration.

2

persons with knowledge of relevant information; (b) drafted a detailed amended complaint; (c) fully briefed and defeated Defendants' motion to dismiss; (d) initiated discovery, including reviewing and analyzing more than 6,500 pages of documents produced by Liberty; (e) taken the deposition of Defendants' class certification expert; (f) fully briefed Plaintiffs' motion for class certification; ; (g) exchanged detailed and candid mediation briefs with Defendants; (h) participated in a full-day mediation with Mr. Meyer; and (i) engaged in weeks of tough settlement negotiations following the mediation. As a result, Plaintiffs and Lead Counsel were well-informed and aware of the strengths and weaknesses of their case when they negotiated the Settlement.

The reaction of the Settlement Class so far also supports the Settlement. In accordance with the Court's May 17, 2022 Preliminary Approval Order (ECF No. 126), the Claims Administrator has caused notice of the Settlement to be disseminated to 22,151 potential Settlement Class Members. Additionally, the Summary Notice was published on *GlobeNewswire*. The deadline for Settlement Class Members to object to any aspect of the Settlement, or request to be excluded from the Settlement, is September 16, 2022. To date, there has not been a single objection or request for exclusion.[4]

For these reasons, and those set forth below, Plaintiffs believe that this Settlement is fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement and approve the Plan of Allocation.

## II.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.     Legal Standards for Final Approval of Class Action Settlement

---

[4] Plaintiffs will address any objections and requests for exclusions received after the date of this submission in Plaintiffs' reply papers to be filed with the Court on September 30, 2022.

It is firmly established in the Tenth Circuit that courts favor the settlement of controversies. *See Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). This is especially true in complex class actions such as this. *See Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2014 WL 3906205, at *3 (D. Colo. Aug. 11, 2014) ("settlements in class actions are favored"); *Diaz v. Romer*, 801 F. Supp. 405, 407 (D. Colo. 1992) (in approving class action settlement, the court explained that a "consensual resolution of a dispute is always preferred"), *aff'd*, 9 F.3d 116 (10th Cir. 1993). Further, the authority to grant or deny approval of a proposed settlement lies within the sound discretion of the Court. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002); *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993). In exercising its discretion, the Court should not adjudicate the merits of the action or substitute its judgment for that of the parties who negotiated the settlement. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) (the court "need not, and should not, decide the merits of the controversy").

In the Tenth Circuit, a class action settlement is entitled to final approval under Rule 23(e) where it is "fair, reasonable, and adequate." *Gottlieb,* 11 F.3d at 1014. To that end, the Tenth Circuit has set forth the following four factors that courts should consider in assessing whether a proposed settlement is fair, reasonable, and adequate: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d

322, 324 (10th Cir. 1984); *see also Belote*, 2014 WL 3906205, at *2 (affirming test).

Rule 23(e) was amended in 2018, and "[t]hese amendments gave four new factors a court must find to render an agreement as fair, reasonable, and adequate."[5] *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020). The "goal of this amendment is not to displace any [circuit's unique] factor[s]," however, courts in the Tenth Circuit, including this Court, continue to apply the traditional factors when evaluating the fairness of the settlement of a class action. Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendment; *see also O'Dowd v. Anthem*, 2019 WL 4279123, at *12 (D. Colo. Sept. 9, 2019) (the court "first addresses the relevant factors the Tenth Circuit applies [] and then, to the extent that they do not overlap, considers the factors identified in Rule 23(e)(2)").

As demonstrated below, the Settlement here satisfies each applicable factor, warranting final approval.

### B. The Settlement is Fair, Reasonable, and Adequate

#### 1. The Settlement was Fairly and Honestly Negotiated

Where a settlement results from arm's-length negotiations between experienced counsel, "the Court may presume the settlement to be fair, adequate and reasonable." *O'Dowd,* 2019 WL 4279123, at *13. Moreover, utilization "of an experienced mediator [] supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved." *In re*

---

[5] The amendment requires consideration of whether: (A) plaintiffs and counsel have adequately represented the class; (B) the settlement was negotiated at arm's-length; (C) the relief for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed fee award, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2).

*Molycorp, Inc. Sec. Litig.*, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017).

Here, the Settlement is the product of hard-fought and protracted negotiations between Lead Counsel and Defendants' Counsel, including a full-day mediation session with Robert A. Meyer of JAMS, a nationally-recognized and experienced mediator of securities class actions, following the exchange of detailed mediation briefs. ¶11_. Although the Parties were still too far apart in their respective positions at the conclusion of the mediation, they continued their negotiations through Mr. Meyer and ultimately reached an agreement in principle to settle the Action pursuant to a "double-blind" mediator's proposal. ¶26. The arms'- length nature of the Parties' negotiations and the active involvement of an independent mediator such as Mr. Meyer provide strong support for approval of the Settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure").

Moreover, the Parties are represented by counsel with considerable experience litigating securities class action such as this. Lead Counsel has a long and successful track record representing investors in securities class actions throughout the country. *See* Ex. 5 (Rosen Law Firm Resume). Defendants are represented by Shearman & Sterling LLP, Davis Polk & Wardwell LLP, and Haynes and Boone LLP (¶¶38-39); there is no question that those three firms possess considerable experience defending securities class actions.

Accordingly, the Settlement here is the result of fair and honest negotiations by the Parties through their experienced counsel, facilitated by a well-regarded mediator. As such, this *Jones* factor has been met and weighs in favor of final approval of the Settlement.

## 2. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt

The second factor that the Tenth Circuit considers in evaluating settlements is whether there were "serious questions of law and fact . . . [that] plac[ed] the ultimate outcome of the litigation in doubt." *Jones*, 741 F.2d at 324. In assessing the Settlement, the Court should balance the benefits of the substantial certain recovery for the Settlement Class against the risks of continued litigation. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). Here, a balance of these factors strongly supports final approval of the Settlement.

As explained in the Rosen Declaration (¶¶30-36), while Plaintiffs were able to overcome Defendants' motion to dismiss, Defendants have a number of credible arguments - against both liability and damages - that could be asserted at summary judgment. They include:

*One*. Defendants will argue – to the extent that Plaintiffs' claims are based on non-disclosure of publicly-available industry trends (*i.e*. fracking supply and demand) occurring at the time of Liberty's IPO in January 2018 – that Plaintiffs' claims are barred by the statute of limitations because the Action was brought in April 2020. While Judge Jackson did not consider Defendants' statute of limitations arguments at the motion to dismiss stage, such arguments would be appropriate for adjudication at summary judgement.

*Two*. While discovery was still at the early stages when the Settlement was reached, internal documents produced by Defendants so far appear to show that pricing was increasing leading up to and following the IPO. This information, if verified, together with the undisputed fact that Liberty's revenue and profits increased from 2017 to 2019, would pose a significant challenge at summary judgement for Plaintiffs' claim that there was oversupply in the fracking industry and that it was negatively affecting Liberty's pricing at the time of the IPO.

*Three*. Defendants have compelling arguments that the Settlement Class suffered any

recoverable damages. Defendants have argued that the decline in Liberty's stock price tracked a general decline in oil prices and the stock of Liberty's competitors, and was not Liberty-specific. Moreover, Defendants have also argued that Liberty at various times in late 2018 and 2019 announced that there was oversupply in the fracking industry and that Liberty was cutting prices – the very information that Plaintiffs allege to have been concealed – but Liberty's stock price did not react in a statistically significant way.

If Defendants were to prevail on any of those arguments, Plaintiffs' case would end and the Settlement Class would recover nothing.  Indeed, "[l]itigating an action under the PSLRA is not a simple undertaking." *In re Crocs Sec. Litig.*, 2014 WL 4670886, at *3 (D. Colo. Sept. 18, 2014). The $3.9 million Settlement provides the Settlement Class with a meaningful, immediate, and certain recovery against the real risk of no recovery if the litigation were to continue. Accordingly, this *Jones* factor supports final approval of the Settlement.

### 3. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief

The third factor for evaluating whether a settlement is fair, reasonable and adequate is "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Jones*, 741 F.2d at 324. This factor is to be weighed "not against the net worth of the defendant, but against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb*, 11 F.3d at 1015. *See also, Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *3 (D. Colo. Apr. 22, 2015) ("'[A] cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of

8

pursuing the litigation to judgment.'"). Plaintiffs strongly believe that the benefits of settling this case now are far superior to the risk of continued litigation.

In addition to the particular risks to proving liability and damages described in the previous section, Plaintiffs also considered the risk and expense inherent in litigating a securities class action through trial. Absent the Settlement, Plaintiffs would have continued with their discovery efforts, including the review and analysis of voluminous document discovery and preparing for numerous depositions. Following fact discovery, the Parties would have engaged in expert discovery, often the most costly phase of complex litigation, and thereafter, briefed summary judgment and prepared for trial. Thus, the costs and risks associated with prosecuting Plaintiffs' claims to a verdict, not to mention through the inevitable appeals that would follow, would have been extraordinarily high.  There may not be a resolution for years.

This $3.9 Settlement, which represents approximately 3.9% of the Settlement Class's maximum, best-case scenario damages of $101 million, is well within the range of recoveries in securities class actions, and provides an immediate benefit to the Settlement Class. ¶36, *See also,* Ex. 6 (NERA Report showing that in 2021, securities class actions settled for a median of 1.8% of damages); *Crocs,* 306 F.R.D. at 691 (approving settlement recovery of 1.3% of damages as it was "in line with the median…").  As such, Plaintiffs believe that this Settlement is superior to the risk of proceeding with the litigation in the hope of a larger recover at a later date, especially when taking into account the possibility of no recovery. Thus, the third *Jones* factor supports final approval.

### 4. Plaintiffs and Lead Counsel Believe that the Settlement is Fair and Reasonable

Plaintiffs and Lead Counsel believe that the Settlement is fair and reasonable in light of all

of the circumstances of the case. *Marcus v. State of Kan.*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable."). Further, "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Farley v. Family Dollar Stores, Inc*., 2014 WL 5488897, at *3 (D. Colo. Oct. 30, 2014) (Moore, J.). Here, Lead Counsel – a firm with extensive experience in securities class actions, and who is intimately familiar with the facts of this case – believes the Settlement provides a fair, reasonable and adequate result for the Settlement Class in light of the risks and costs of continued litigation. Plaintiffs also endorse the Settlement. *see* Ex. 2 (Declaration of Cipriano Correa), at ¶9; Ex. 3 (Declaration of March Joseph) at ¶8. Plaintiffs' interest in obtaining the largest-possible recovery in this Action is firmly aligned with all Settlement Class Members. *Molycorp,* 2017 WL 4333997, at *7.

The reaction of the Settlement Class, to date, also support approval of the Settlement. The Claims Administrator has caused notice of the Settlement to be disseminated to 22,151 potential Settlement Class Members.[6] Additionally, the Summary Notice was published on *GlobeNewswire*. Craig Decl. at ¶10. The deadline for Settlement Class Members to object to any aspect of the Settlement, or request to be excluded from the Settlement, is September 16, 2022. To date, there has not been a single objection or request for exclusion. *Id.* at ¶¶13-14.[7]

---

[6] *See* Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections at ¶8 ("Craig Decl."), attached as Ex. 1 to the Rosen Decl.

[7] Plaintiffs will address any objections and requests for exclusions received after the date of this submission in Plaintiffs' reply papers to be filed with the Court on September 30, 2022.

Accordingly, the fourth *Jones* also supports final approval of the Settlement.

### 5. Additional Factors Also Support Final Approval

The following additional considerations also warrant final approval of the Settlement.

*First,* with respect to the manner in which the Settlement will be distributed, the proposed Plan of Allocation satisfies Rule 23(e)(2)(D) because it treats all Settlement Class Members equally. As set forth in Section III below, the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Loss.

*Second*, the Settlement readily meets the requirements of Rule 23(e)(2)(C). As discussed in detail in Section V below, the notice program complied in all respects with the requirements set forth in this Court's Preliminary Approval Order, and the Notice contains all the information required by Rule 23(c)(2)(B), the PSLRA (15 U.S.C. §77z-1(a)(7)), and due process. Indeed, the Court-approved Notice "gave the Settlement Class notice of the terms of the proposed Settlement Agreement; the rights of Class Members under the Settlement Agreement—including the rights to opt-out, object, and be heard at a Final Fairness Hearing; [and] the application for counsel fees, costs and expenses..." *Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, at *2 (D. Colo. Dec. 16, 2019) (holding "this Notice . . . constitutes due and sufficient notice").

*Third*, Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in the Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Plaintiffs, filed concurrently herewith, Lead Counsel seeks an award of attorneys' fees of one-third of the Settlement, and reimbursement of litigation expenses. This fee request, fully disclosed in the Notice, is in line with other settlements approved in this Circuit. *See Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.,* 2010 WL

11

5387559, at *5 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one-third of the total economic benefit bestowed on the class.").

In addition, Lead Counsel requests that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 846 (E.D. Va. 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order."). Indeed, such "provisions are common." *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016).

*Fourth*, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a standard supplemental agreement which provides that if the number of opt-outs reach a certain confidential threshold, Defendants have the option to terminate the Settlement. This was disclosed in the Stipulation (¶2.12), and in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 123 at page 15). As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation, the terms were confidential to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to exact an individual settlement. This agreement has no bearing on the fairness of the Settlement, and as such, this factor weighs in favor of final approval. *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out."); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (stating that opt-out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the

12

Settlement").

Thus, the additional Rule 23(e) factors support the Settlement's approval.

## III. THE PLAN OF ALLOCATION SHOULD BE APPROVED

The objective of a plan of allocation is to provide an equitable method for distributing a settlement fund among eligible class members. In this District, "a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable" and should be approved. *O'Dowd*, 2019 WL 4279123, at *15. The Plan of Allocation, which is set forth in the Notice disseminated to the Settlement Class, also warrants the Court's approval.

Here, the proposed Plan of Allocation was developed by Lead Counsel in consultation with a financial expert after careful consideration of Plaintiffs' theories of liability and alleged damages under the Securities Act. ¶¶42-43. Under the Plan of Allocation, a Recognized Loss amount will be calculated for each eligible Settlement Class Member (*i.e.* Authorized Claimant) based on when they bought and/or sold their shares of Liberty common stock and at what price, and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Loss. *See* Craig Decl. at Ex. A (Long Notice) at pp. 5-7. In accordance with the Securities Act, the Plan of Allocation does not compensate those who sold their Liberty shares above the IPO price of $17. ¶43. Furthermore, nobody receives preferential treatment under the Plan of Allocation, as the formula for calculating Recognized Loss is the same for all Settlement Class Members, including Plaintiffs.

Courts routinely approve substantially similar methods of distributing recoveries in securities class actions such as this one, and Plaintiffs respectfully submit that this Court should approve the Plan of Allocation submitted here. *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D.

306, 317 (E.D.N.Y. 2006) (approving plan of allocation as fair and reasonable where it treated class members equally and on a *pro rata* basis and comported with the plaintiffs' theory of damages); *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) ("plans that allocate money depending on the timing of purchases and sales of the securities at issue are common").

## IV. FINAL CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

In its Preliminary Approval Order, the Court found, "preliminarily and for purposes of this Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied". Preliminary Approval Order at ¶3 (finding that each of the six factors of Rule 23(a) and (b)(3) had been satisfied). Nothing has changed with respect to these elements since the Court entered the Preliminary Approval Order. Thus, for the reasons stated in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 123 at pp. 3-9), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3) for purposes of effectuating the Settlement.

## V. NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH RULE 23, THE PSLRA, AND DUE PROCESS

Notice to the Settlement Class of the Settlement satisfies the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (notice need not be perfect

or received by every class member, but instead be reasonable under the circumstances). "The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options." *Gottlieb*, 11 F.3d at 1013. The notice program used here, carried out in accordance with the Court's Preliminary Approval Order, meets this standard.

The notice program was carried out by the Court-appointed Claims Administrator, Strategic Claims Services ("SCS"), under the supervision of Lead Counsel. *See generally* Craig Decl. As noted above, 22,151 potential Settlement Class Members received notice of the Settlement. Craig Decl. at ¶8. This includes 18,417 Postcard Notices mailed by the Claims Administrator and third-party nominees such as brokerage firms and banks, an additional 3,581 potential Settlement Class Members who received a direct link to the Long Notice and Claim Form from their nominees, and a nominee provided SCS with email addresses of 153 potential Settlement Class Members so that SCS could email direct links to the Long Notice and Claim Form. *Id.* at ¶¶ 6-7. The Summary Notice was also published electronically over *GlobeNewswire*. *Id.* at ¶10. In addition, a dedicated toll-free telephone number and website were established to assist potential Settlement Class Members with inquiries regarding the litigation, the Settlement, and the claims process. *Id*. at ¶11.

The Notice contains the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 77z-1(a)(7), including: (i) an explanation of the nature of the Action and claims asserted; (ii) the definition of the Settlement Class; (iii) a description of the key terms of the Settlement, including the consideration amount and the releases to be given; (iv) the Plan of Allocation; (v) the Parties' reasons for proposing the Settlement; (vi) a description of the attorneys' fees and

15

expenses that will be sought; (vii) an explanation of Settlement Class Members' right to request exclusion from the Settlement Class and to object to the Settlement, the Plan of Allocation or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Settlement Class Members. The Notice also provides: instructions for submitting a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund and relevant deadlines; and the contact information for Lead Counsel and SCS. *See* Craig Decl., Ex. A (Long Notice).

The mailing of Postcard Notices to Settlement Class Members who could be identified with reasonable effort, supplemented with notice in a widely-circulated publication and over a newswire, and a dedicated website, was "the best notice ... practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g., In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."); *Baker v. SeaWorld Entm't, Inc.,* No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar notice program including website). Accordingly, the notice program was sufficient.

## VI.   CONCLUSION

For foregoing reasons, and the declarations submitted herewith, Plaintiffs respectfully request that the Court grant final approval of the Settlement and approve the Plan of Allocation.

Dated: September 9, 2022                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
*/s/ Laurence Rosen*
Laurence Rosen
Yu Shi
275 Madison Ave, 40th Floor
New York, NY 10016

16

Tel: (212) 686-1060
Email: lrosen@rosenlegal.com
yshi@rosenlegal.com

*Lead Counsel for Plaintiffs and the Settlement Class*

## CERTIFICATE OF SERVICE

I, Laurence Rosen, an attorney, hereby certify that on September 9, 2022, I caused a true and correct copy of the foregoing "PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION" to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 9, 2022

*/s/Laurence Rosen*
Laurence Rosen
