IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-CV-00946-RM-NRN

CIPRIANO CORREA et al., Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

LIBERTY OILFIELD SERVICES INC., et al.,

    Defendants.

**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS**

Lead Plaintiff Cipriano Correa ("Correa") and Named Plaintiff Marc Joseph ("Joseph" collectively, "Plaintiffs")[1] respectfully move this Court, pursuant to Fed. R. Civ. P. 23, for entry of an order granting an award of attorneys' fees, reimbursement of litigation expenses, and award to Plaintiffs.[2]

**I.    PRELIMINARY STATEMENT**

After two and a half years of hard-fought litigation, The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Plaintiffs and the Settlement Class, have negotiated a $3.9 million cash recovery for the benefit of the Settlement Class. Lead Counsel achieved this

---

[1] Unless otherwise indicated, all capitalized terms have the same meanings as set forth in the Stipulation of Settlement (the "Stipulation") (ECF No. 124).

[2] Pursuant to D.C.COLO.LCivR 7.1(a), Plaintiffs have conferred with Defendants regarding this motion, and are authorized to state that Defendants take no position on this motion.

1

result through diligent prosecution of this Action, without the benefit of any government or regulatory action, and in the face of considerable challenges from formidable opposition – all while bearing the substantial risk of receiving no compensation at all. For their efforts, Plaintiffs and Lead Counsel seek: (a) an award of attorneys' fees of one-third of the Settlement, or $1.3 million; (b) reimbursement of litigation expenses in the amount of $42,279.72, and (c) an award of $7,500 each to Mr. Correa and Mr. Joseph to compensate them for their time stewarding this Action on behalf of the Settlement Class.

The requested fee is reasonable. To achieve this Settlement, Lead Counsel, among other things, conducted a thorough factual investigation into the Settlement Class's claims, including reviewing and analyzing voluminous publicly-available information, retaining and overseeing a private investigator to locate and interview former Liberty employees and relevant third-parties, drafted a detailed amended complaint based on that investigation, briefed and defeated Defendants' motion to dismiss, consulted with expert on damages, briefed a motion for class certification, defended two depositions and took the deposition of Defendants' class certification expert, reviewed more than 6,500 pages of documents produced by Liberty in discovery, and engaged in intensive settlement negotiations with an experienced and respected neutral mediator. In total, Lead Counsel spent more than 1,022 hours of professional time litigating this Action on behalf of the Settlement Class.

Indeed, this was not an easy case to litigate. Courts have recognized that securities class actions are notoriously complex and risky, and this case is no exception. While Lead Counsel was able to defeat Defendants' motion to dismiss, Defendants have compelling arguments against liability and damages, and further litigation would have been fraught with risk. Nevertheless, Lead

2

Counsel was able to negotiate this $3.9 million Settlement in large part because of Lead Counsel's diligent prosecution of this Action leading up to the Settlement.

Lead Counsel's fee request is also reasonable because it is no more than what courts typically award in similar cases. In this Circuit, an award of one-third of the Settlement Fund is "the customary fee." *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015).

Lead Counsel's litigation expenses should also be reimbursed. Lead Counsel incurred them as a result of reasonable and necessary steps taken during the litigation. The bulk of the expenses were for retaining experts, investigators, as well as Robert A. Meyer's mediation fee. These expenses were all necessary to obtain this Settlement. Significantly, the requested reimbursement of $42,279.72 is substantially less than the $65,000 amount stated in the Notice disseminated to the Settlement Class.

Finally, the Court should award Plaintiffs $15,000 in total (comprised of $7,500 each to Mr. Correa and Mr. Joseph) to reimburse them for their time spent on behalf of the Settlement Class. Plaintiffs diligently discharged their responsibilities to the Settlement Class, including sitting for depositions. Compensatory awards for representative plaintiffs are expressly contemplated by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and routinely awarded in securities class actions.

The Settlement Class supports the requests. Notice of the Settlement (which describes the request for attorneys' fees, reimbursement of expense, and award to Plaintiffs) has been disseminated to 22,151 potential Settlement Class Members. Additionally, the Summary Notice was published on *GlobeNewswire*. To date, not a single objection has been filed.[3]

---

[3] The deadline for filing objections is September 16, 2022. Plaintiffs will address any objections

## II. FACTUAL AND PROCEDURAL HISTORY

The concurrently filed Declaration of Laurence Rosen ("Rosen Declaration" or "Rosen Decl.") is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the litigation and negotiations leading to Settlement; the risks and uncertainties of continued litigation; and a description of the services Lead Counsel and Plaintiffs provided for the benefit of the Settlement Class.[4]

## III. ARGUMENT

### A. Lead Counsel is Entitled to a Fee

The Supreme Court and Tenth Circuit have both recognized that counsel should be compensated from any "common fund" they create for the benefit of a class. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988). The common fund doctrine both rewards attorneys for their efforts and prevents unjust enrichment of class members who benefit from a lawsuit without paying for its costs. *See Boeing Co.*, 444 U.S. at 478; *Brown*, 838 F.2d at 454.

"Congress, the Executive Branch, and [the Supreme] Court, moreover, have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions[.]" *Amgen Inc. v. Connecticut*

---

received after the date of this submission in Plaintiffs' reply papers to be filed with the Court on September 30, 2022.

[4] All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in and Exhibits to, the Rosen Decl.

4

*Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) (internal citation omitted). The meritorious private actions the Supreme Court referenced are largely class actions. In fact, the case *Amgen* quoted (*Tellabs*),[5] and the two cases *Tellabs* relied upon for the proposition quoted in *Amgen*,[6] were all securities class actions. Thus, if meritorious private actions are to function as an "essential supplement" to criminal prosecutions and civil enforcement, counsel who pursue these actions to a successful conclusion must receive sufficient compensation. *In re Worldcom, Inc. Sec. Litig.*, 388 Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").

### B. In Common Fund Cases, Courts in the Tenth Circuit Employ the Percentage-of-the-Fund Method to Award Attorneys' Fees

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the common fund doctrine a "reasonable" fee may be based "on a percentage of the fund bestowed on the class." For a number of reasons, the Tenth Circuit "express[es] a preference for the percentage-of-the-fund approach" to measure attorneys' fees. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458 (10th Cir. 2017). *First*, the percentage method is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery. *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a

---

[5] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

[6] *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005); *J. I. Case Co. v. Borak*, 377 U.S. 426, 427 (1964).

paying client."). *Second*, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time required under the circumstances. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (with the percentage-of-the-fund method, "the court apportions the fund between the class and its counsel in a manner that rewards counsel for success and penalizes it for failure."). *Third*, using the percentage-of-the-fund method reduces the burden on the court, as it would otherwise have to conduct a detailed and time-consuming review of counsel's time entries. *In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1411 (D. Wyo. 1998) ("[I]t is much easier and far less demanding of scarce judicial resources to calculate a percentage of the fund fee than to review hourly billing practices over a long, complex litigation."). By simplifying the court's task, the percentage method also ensures the funds can be distributed to class members promptly. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1270 (D.C. Cir. 1993). *Fourth*, the text of the PSLRA states that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 (3d Cir. 2005) n. 7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable.").

    **C.**    **The *Johnson* Factors Support the Reasonableness of the Fee Request**

To determine a reasonable fee award percentage, court in the Tenth Circuit consider the *Johnson* factors. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458 (10th Cir. 2017) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)). The *Johnson* factors answer three questions:

    A.  What was the burden on counsel? The specific *Johnson* factors are: A.1. the time

       and labor required; A.2 the preclusion of other employment by the attorneys due to the acceptance of the case; and A.3 the undesirability of the case;

  B. What level of skill was required from counsel, and what skill did counsel employ? The specific *Johnson* factors are: B.1. The novelty and difficulty of the questions presented by the case; B.2. the skill requisite to perform the legal services properly; B.3. the experience, reputation, and ability of the attorneys; and B.4. the amount involved and the results obtained; and

- C. Is the fee request out of line with awards in cases that are similar in relevant respects? The specific *Johnson* factors are: C.1. the customary fee; C.2. whether the fee is fixed or contingent; and C.3. awards in similar cases.[7]

*Id.*

### 1. The Burden on Lead Counsel Supports the Requested Fee

The time and labor expended by Lead Counsel in prosecuting this Action supports the requested fee. As described in the Rosen Decl. (¶53), these efforts included: investigating and preparing the initial complaint; preparing the motion for appointment of lead plaintiff; conducting a thorough investigation that included reviewing voluminous public documents and interviewing former employees, which proved critical in drafting a detailed amended complaint sufficient to defeat Defendants' motion to dismiss; as well as preparing a thorough and effective opposition to Defendants' motion to dismiss. Furthermore, Lead Counsel engaged in significant discovery,

---

[7] Lead Counsel respectfully submits that two *Johnson* factors—the time limitations imposed by the client or the circumstances, and the nature and length of the professional relationship with the client—are not relevant in this securities class action, and therefore not addressed herein.

including consulting with economic experts, reviewing more than 6,500 pages of documents produced by Liberty, collecting and producing documents in response to Defendants' document requests, responding to Defendants' interrogatories; engaging in extensive class certification-related briefing and discovery, including defending Plaintiffs' depositions and taking the deposition of Defendants' class certification expert. In addition, the extensive negotiations were time-consuming, including submitting detailed mediation statements and reviewing Defendants' submissions, attending a full-day mediation, and then engaging in weeks of hard-fought negotiations after the mediation that culminated in the Settlement. In total, Lead Counsel spent 1,022.25 hours prosecuting this Action.[8]

The Court may, but need not, use the lodestar as a crosscheck to ensure the fee is reasonable. *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021). The total value of the time Lead Counsel expended, based on Lead Counsel's attorneys' current rates, is $823,290. Should the Court award a fee of one-third of the Settlement ($1.3 million), Lead Counsel would receive multiplier of 1.58 on its time, which is at the low end of the typical range of multipliers routinely approved by courts in this District and throughout the Tenth Circuit. *See, e.g., In re DaVita Healthcare Partners, Inc. Deriv. Litig.*, 2015 WL 3582265, at *5 (D. Colo. June 5, 2015) (multiplier of 3 "in line with the multipliers awarded in similar cases"); *In re Crocs, Inc. Sec. Litig.,* 2014 WL 4670886, at *2 (D. Colo. Sept. 18, 2014) (referencing District cases approving multipliers ranging from 2.5 to 4.6).

---

[8] Lead Counsel will continue to expend additional time and out-of-pocket expenses in connection with the settlement administration process, attending the Settlement Hearing, and, if the Settlement is approved, assisting with implementation of the Settlement.

Calculating Lead Counsel's lodestar using current rates is customary because doing so compensates counsel for the substantial delay in payment. As the Supreme Court has explained with respect to statutes akin to the PSLRA that provide for an award of "reasonable attorneys' fees, an "appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *see also Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 710 (2d Cir. 2009) (reversible error not to use current rates); *see also In re: Urethane Antitrust Litig.*, 2016 WL 4060156, at *7 n.7 (D. Kan. July 29, 2016) (using current rates in common fund case); *Crocs*, 2014 WL 4670886, at *2 (same).

Further, "[w]here litigation features a national scope and requires a 'highly-specialized' opposing counsel, national rates should apply to determining the lodestar." *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2020 WL 9936692, at *6 (W.D. Okla. June 11, 2020), *aff'd,* 997 F.3d 1077 (10th Cir. 2021). Defendants retained securities class action specialists from New York and Dallas. Plaintiffs must be able to do the same.

In securities class actions, rates of $455 to $1,050 "are generally consistent with hourly rates approved in similar cases." *Voulgaris v. Array Biopharma Inc.*, 2021 WL 6331178, at *14 (D. Colo. Dec. 3, 2021). Lead Counsel's rates were recently approved in several securities class actions. *Sanders v. The RealReal, Inc., et al*., 5:19-cv-07737 (N.D.Cal.), ECF No. 71-3 (fee awarded at ECF No. 76); *Ortiz v. Canopy Growth Corp., et al*., 2:19-cv-20543 (D.N.J.) ECF N. 92-4 at PageID: 7536 (fee awarded as ECF No. 100).  Lead Counsel's rates are also comparable to rates charged by peer plaintiff and defense firms litigating matters of similar magnitude. *See* Ex. 5 (Peer Firms Billing Rates).

9

Moreover, this case was plainly undesirable. The PSLRA requires that plaintiffs broadly disseminate notice of the filing of a securities class action advising class members they may seek appointment as lead plaintiffs and ask that their counsel be appointed lead counsel. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 (2018). These notices usually draw many applications, *id.*, but here, only two firms applied.[9] The case's undesirability warrants a higher fee. *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("Lack of competition not only implies a higher fee but also suggests that most members of the securities bar saw this litigation as too risky for their practices."); *DaVita*, 2021 WL 2981970, at *4 (similar).

### 2. The Skill Required and Demonstrated Supports the Requested Fee

Factors B.1, B.2, B.3, and B.4 relate to the complexity of the case and Lead Counsel's skill. The factors are related in that it takes skillful counsel to address complex issues. These factors support the requested fee.

Securities class actions are notoriously difficult to prosecute because of the heightened pleading standards established by the PSLRA. As Judge Keith P. Ellison once remarked, "[t]he Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading." *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012). Indeed, "[l]egal precedents are continually making it more difficult to plead securities class actions." *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016); *Crocs,* 2014 WL 4670886, at *5 ("Litigating an action under the PSLRA is not a simple undertaking, especially given the specificity required to

---

[9] The other firm was Glancy Prongay & Murray LLP, who subsequent filed a notice of non-opposition, withdrawing from contention. *See* ECF No. 45.

plead such claims" and noting the risk of no compensation "not merely hypothetical" given PSLRA pleading standards, among other things). "Simply investigating the facts in order to file a suitable complaint against [defendants] under the PSLRA required substantial effort and expertise." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1149 (D. Colo. 2009). Win or lose, Lead Counsel must spend tens or hundreds of hours and tens of thousands of dollars investigating and pleading a case, and more time and money opposing the motion to dismiss.

Lead Counsel carefully researched and crafted a theory of the case that overcame the PSLRA pleading standards and prevailed against Defendants' motion to dismiss. "The degree of success a plaintiff enjoys is a critical factor in determining the amount of fees to be awarded." *Interthinx*, 2015 WL 1867861, at *7. Lead Counsel then fully briefed a motion for class certification and aggressively sought discovery. Only then was Lead Counsel able to negotiate the $3.9 million Settlement.

Indeed, Lead Counsel's diligent and creative prosecution of the case undoubtedly contributed to Defendants' willingness to settle the Action for $3.9 million even though Defendants had a number of compelling arguments, any of which could potentially end the case at summary judgment and leave the Settlement Class with no recovery. *See* ¶¶31-33. The $3.9 Settlement, which represents approximately 3.9% of the Settlement Class's maximum, best-case scenario damages of $101 million, is well within the range of recoveries in securities class actions. ¶36, *See also,* Ex. 6 (NERA Report showing that in 2021, securities class actions settled for a median of 1.8% of damages); *Crocs,* 306 F.R.D. at 691 (approving settlement recovery of 1.3% of damages as it was "in line with the median…"); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*,

11

343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018) ("Because Plaintiffs face serious challenges to establishing liability,… consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery.").

Courts throughout the country have recognized that Rosen Law is well qualified to prosecute securities class actions. *Vinh Nguyen v. Radient Pharm. Corp*., 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (in a case settled after summary judgment, Rosen Law "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation."); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (considering Rose Law's achievement of $250 million settlement—the largest ever against a company based in China—and finding that "[t]he quality of representation by both Plaintiffs' and Defendants' counsel was high in this case and supports the requested fee."); *Whiteley v. Zynerba Pharms., Inc.*, 2021 WL 4206696, at *12 (E.D. Pa. Sept. 16, 2021) (recognizing that Rosen Law has "substantial experience prosecuting large-scale class actions, including securities class actions like the case *sub judice*. This experience undoubtedly contributed to the favorable outcome negotiated with equally experienced opposing counsel.").

Courts also take into account the quality of opposing counsel. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455 (10th Cir. 1988) (affirming district court's analysis). Defendants are represented in this action by Shearman & Sterling LLP, Davis Polk & Wardwell LLP, and Haynes and Boone LLP, three firms whose strong reputations need no burnishing. That Lead Counsel was able to defeat Defendants' motion to dismiss and obtain the $3.9 million Settlement in the face of formidable opposition further supports the requested fee.

### 3. A Comparison with Relevant Cases Supports the Requested Fee

The Tenth Circuit requires that courts compare the requested fee to awards in similar cases (C.1., C.3.), giving thought to whether the fee is fixed or contingent. C.2.

As in most class actions, the fee in this case is contingent. "A contingent fee, and the potential for a relatively high fee, is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful." *Qwest Commc'ns*, 625 F. Supp. 2d at 1151 . "A contingent fee arrangement often weighs in favor of a greater fee because '[s]uch a large investment of money [and time] place[s] incredible burdens upon law practices.'" *Crocs,* 2014 WL 4670886, at *4 (alterations in *Crocs*) (awarding 30% fee even though settlement was reached while case was on appeal after grant of pre-discovery motion to dismiss); *Gundrum v. Cleveland Integrity Servs., Inc.*, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) ("[T]he Court notes that contingent fees in the range of one-third of a common fund are frequently awarded in Rule 23 class settlements."); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming 3.65 multiplier and explaining that in contingency fee cases, courts "routinely enhance the lodestar to reflect the risk of nonpayment" and that this "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases.").

In the Tenth Circuit, it is not unusual for courts to award fees of 40% of the settlement fund. *Nakamura v. Wells Fargo Bank, Nat'l Ass'n*, 2019 WL 2185081, at *3 (D. Kan. May 21, 2019) (citing cases); *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *7 n.6 (D.N.M. Apr. 9, 2021) (citing cases). Thus, "a fee award of one-third of

the common fund [is] 'well within the range typically awarded in class actions.'" *Nakamura*, 2019 WL 2185081, at *2. Indeed, "*[t]he customary fee* awarded to class counsel in a common fund settlement is approximately **one third of the total economic benefit** bestowed on the class." *Interthinx*, 2015 WL 1867861, at *6 (emphasis added).

Although the time to object to any aspect of the Settlement, including the requests for attorneys' fees, reimbursement of expenses, and award to Plaintiffs, has not yet passed, to date no Settlement Class Members have objected. Ex. 1, Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections ("Craig Decl.") at ¶¶13-14. The Settlement Class's reaction thus supports the requests. *Crocs,* 2014 WL 4670886, at *5 ("the fact that none of the class members objected to the requested attorneys' fees is significant and weighs in favor of the requested award"); *Anderson v. Merit Energy Co*., 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009) ("The absence of any Class Members' objection is an additional factor that supports this Court's approval of the requested attorneys' fees.").

Lead Counsel invested over 1,022 hours and over $40,000 in out-of-pocket expenses into this case. They would recover nothing from these substantial outlays unless they could obtain a judgment or secure a settlement. Lead Counsel's request for the customary fee is reasonable.

IV. **LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES IS REASONABLE AND SHOULD BE APPROVED**

Lead Counsel seeks reimbursement of $42,279,72 in litigation expenses. The Rosen Decl. (¶51) contains a breakdown of these expenses. Lead Counsel's expenses should be reimbursed because they are of the type that are usually paid by clients in non-contingent litigation and are reasonable. *Voulgaris*, 2021 WL 6331178, at *14; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*,

14

2010 WL 4537550, at *30 (S.D.N.Y. Nov. 8, 2010) ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"). The requested amount is also notably less than the $65,000 stated in the Notice. ¶50.

Approximately half of the expenses ($21,723) were for retaining experts, investigators, and Mr. Meyer's mediation services.  The remaining expenses are attributable to the costs of, among other things, travel and meals,[10] document hosting, transcripts, service of process, press releases to communicate with potential Settlement Class Members, copying and producing documents, legal and factual research, and other incidental expenses incurred in the course of the litigation of the Action. These expenses were critical to Plaintiffs' success in achieving the Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities class action. As such, they should be awarded. *See Flag Telecom*, 2010 WL 4537550, at *30;  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").

## V.     THE COURT SHOULD GRANT THE AWARD TO PLAINTIFFS TO REIMBURSE THEM FOR THEIR TIME AND EXPENSES

The Court should also grant Plaintiffs compensatory awards, totaling $15,000 (consisting of $7,500 each to Mr. Correa and Mr. Joseph). The award to Plaintiffs amount to about 0.3% of the Settlement.

---

[10] *E.g.* Lead Counsel, who is based in New York, traveled to Brawley, California and Scottsdale, Arizona to prepare and defend the depositions of Mr. Correa and Mr. Joseph.

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. §77z-1(a)(4). In the Tenth Circuit, courts consider "(1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 2021 WL 1387110, at *6 (D. Colo. Apr. 13, 2021) (awarding lead plaintiffs $10,000 each in case that settled during class certification).

For the past two and a half years, Plaintiffs have kept abreast of developments in the case, reviewed complaint, declarations, briefs, and communicated with counsel. *See* Ex. 2 (Correa Decl.) and Ex. 3 (Joseph Decl.). They responded to Defendants' document requests and interrogatories. They prepared for and attended their depositions. They discussed settlement with counsel and then, after careful consideration, gave Lead Counsel the authority that allowed them to negotiate the Settlement. In sum, the Plaintiffs burdened themselves over a long period of time to benefit the Settlement Class, and there would have been no Settlement without Plaintiffs' energetic and active representation of the Settlement Class. This $3.9 million settlement is attributable to their efforts. They should be awarded $7,500 each as reimbursement

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Lead Counsel attorneys' fees in the amount of one-third of the Settlement Amount, or $1.3 million (plus interest), reimbursement of out-of-pocket litigation expenses of $42,279.72, and an Award to Plaintiffs totaling $15,000.

Dated: September 9, 2022               Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
*/s/ Laurence Rosen*
Laurence Rosen
Yu Shi
275 Madison Ave, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Email: lrosen@rosenlegal.com
         yshi@rosenlegal.com

*Lead Counsel for Plaintiffs and the Settlement Class*

**CERTIFICATE OF SERVICE**

I, Laurence Rosen, an attorney, hereby certify that on September 9, 2022, I caused a true and correct copy of the foregoing "PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS" to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 9, 2022

*/s/Laurence Rosen*
Laurence Rosen