## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-CV-00946-RM-NRN

CIPRIANO CORREA et al., Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

LIBERTY OILFIELD SERVICES INC., et al.,

    Defendants.

---

**DECLARATION OF LAURENCE ROSEN IN SUPPORT OF: (I) MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF
ALLOCATION; AND (II) MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS**

---

I, Laurence Rosen, declare as follows:

1.    I am the Managing Partner of The Rosen Law Firm, P.A. ("Rosen Law"), Lead

Counsel for Lead Plaintiff Cipriano Correa and Named Plaintiff Marc Joseph ("Plaintiffs") and

the Settlement Class in the above-captioned litigation ("Action"). I am over the age of 18 and

am admitted to practice before this Court. I have personal knowledge of the matters set forth

herein and, if called upon, I could and would completely testify thereto.

2.    I submit this Declaration in support of Plaintiffs' Motions, filed concurrently

herewith, for: (1) Final Approval of Class Action Settlement and Plan of Allocation; and (2)

Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Plaintiffs. The

purpose of this Declaration is to set forth the nature of the investigation, litigation and

1

negotiations that led to the Settlement with Defendants.[1] This Declaration attempts to demonstrate why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Lead Counsel's requests for attorneys' fees and expenses and award to Plaintiffs are reasonable and should be approved by the Court.

3.     The Settlement provides for a cash payment by or on behalf of Defendants in the amount of $3.9 million in exchange for full releases of Plaintiffs' claims, and completely resolves the Action.

4.     After Plaintiffs moved for preliminary approval of the Settlement on May 13, 2022, the Court entered an order preliminarily approving the Settlement, preliminarily certifying the Settlement Class for settlement purposes, and approving the form and manner of providing notice to potential Settlement Class Members (the "Preliminary Approval Order"). ECF No. 126.

5.     Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to Lead Counsel of one-third (1/3) of the Settlement Fund (or $1.3 million), reimbursement of Lead Counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $42,279.72, and a compensatory award to Plaintiffs totaling $15,000.

6.     Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections ("Craig Decl.").

7.     Attached hereto as Exhibit 2 is a true and correct copy of the Declaration of Cipriano Correa ("Correa Decl.").

---

[1] Unless otherwise indicated, all capitalized terms have the same meaning as set forth in the Stipulation of Settlement ("Stipulation") (ECF No. 124).

8.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the Declaration of Marc Joseph ("Joseph Decl.").

9.      Attached hereto as <u>Exhibit 4</u> is a true and correct copy of the firm resume of Rosen Law ("Rosen Law Firm Resume")

10.     Attached as <u>Exhibit 5</u> is a true and correct copy of peer firm billing rates ("Peer Firms Billing Rates").

11.     Attached as <u>Exhibit 6</u> is a true and correct copy of excerpts from Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review, published by NERA Economic Consulting ("NERA Report").

**<u>Procedural History</u>**

12.     This Action commenced on April 3, 2020, when Mr. Joseph filed a putative securities class action complaint in this Court against Defendants alleging claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"). ECF No. 1.

13.     On June 2, 2020, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Mr. Correa moved to be appointed Lead Plaintiff. ECF No. 48. The Court granted his motion on August 7, 2020, appointing Mr. Correa as Lead Plaintiff and approving his selection of Rosen Law as Lead Counsel. ECF No. 48.

14.     Upon his appointment as Lead Plaintiff, Mr. Correa, through Lead Counsel, further investigated the claims in this Action by, among other things, reviewing: Liberty's public filings, announcements, press releases, and earnings call transcripts; analyzing analyst reports, news articles, and online forums concerning Liberty and the fracking industry; retaining and overseeing a private investigator to locate dond interview former Liberty employees and relevant

3

third-party witnesses; and consulting with an economics expert to analyze the range of provable damages.

15.    Mr. Correa pled the facts learned in the investigation in the Amended Class Action Complaint For Violations of the Federal Securities Laws ("Complaint"). ECF No. 52.

16.    On September 14, 2020, in accordance with Judge R. Brooke Jackson's Practice Standards, Defendants filed their letter stating their intention to move to dismiss the Complaint. ECF No. 53. Mr. Correa filed a letter in response on September 22, 2020. ECF No. 54.

17.    On October 8, 2020, Defendants filed their motion to dismiss the Complaint. ECF No. 64. Correa filed his opposition brief on November 23, 2020. ECF No. 71. Defendants filed their reply on December 16, 2020. ECF No. 75.

18.    On July 12, 2021, Judge Jackson denied the motion to dismiss as to Section 11 and Section 15 claims, and granted the motion to dismiss as to the Section 12(a)(2) claim. ECF No. 80.

19.    On August 25, 2021, Defendants filed their answers to the Complaint. Dkt. Nos. 83-85.

20.    On October 7, 2021, the Parties entered into a stipulation to amend the Complaint to add Mr. Joseph as a named plaintiff (ECF No. 86), which Judge Jackson granted on October 12, 2021. ECF No. 87. On October 13, 2021, Plaintiffs filed the operative Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint"). ECF No. 89. The Court ordered that Defendants need not separately answer the Amended Complaint and that Defendants' answers to the Complaint were deemed to be their answers to the Amended Complaint. ECF No. 87.

21.    On October 26, 2021, the Action was reassigned from Judge Jackson to Judge Raymond P. Moore for all further proceedings. ECF No. 93.

22.    On November 1, 2021, Plaintiffs filed their motion for class certification. ECF No. 100.  Defendants filed their opposition to the class certification motion on January 14, 2022. ECF No. 116. Plaintiffs filed their reply in further support of the motion for class certification on February 28, 2022. ECF No. 120.

**Settlement Negotiations**

23.    In the fall of 2021, with discovery underway, the Parties began discussing a potential mediation to resolve the Action.

24.    On February 11, 2022, Plaintiffs, Liberty, and the Individual Defendants participated in a full-day mediation with Robert A. Meyer of JAMS, a respected mediator experienced in mediating complex securities class actions such as this one.  Prior to the mediation, the Parties exchanged detailed mediation statements setting forth their positions on liability and damages.

25.    The Parties did not reach an agreement at the mediation.  However, the Parties continued their settlement negotiations in the weeks following the mediation with Mr. Meyer's assistance.

26.    On February 28, 2022, the Parties received and agreed to a "double-blind" mediator's proposal from Mr. Meyer, reaching an agreement in principle to settle this Action.

27.    Over the next several months, the Parties worked diligently to complete their negotiations and formalize the Settlement, culminating in the comprehensive Stipulation of Settlement.

28.    On May 13, 2022, Plaintiffs filed their motion for preliminary approval of the Settlement. ECF No. 123. The Court granted the motion and entered the Preliminary Approval Order on May 17, 2022. ECF No. 126.

### Summary of Plaintiffs' Allegations

29.    This Action concerns the Registration Statement that Liberty issued in connection with its January 17, 2018 initial public offering ("IPO").  Plaintiffs allege that the Registration Statement was false and misleading because it failed to disclose that the fracking industry was experiencing oversupply at the time of the IPO, and that this oversupply was leading to price reductions at fracking companies, including at Liberty. Plaintiffs allege that rather than disclosing the oversupply and price reductions, the Registration Statement instead stated that the fracking industry was contracting and the Liberty was experiencing price increases.

### Risks of Continued Litigation

30.    The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a cash payment of $3.9 million. As explained below, this case presents significant risks such that Plaintiffs and the Settlement Class might recover nothing at all if the case proceeded through additional layers of litigation.

31.    Defendants have compelling defenses that could derail Plaintiffs' case at summary judgment. First, Defendants will argue – to the extent that Plaintiffs' claims are based on non-disclosure of publicly-available industry trends (*i.e.* fracking supply and demand) occurring at the time of Liberty's IPO in January 2018 – Plaintiffs' claims, which were brought in April 2020, are barred by the statute of limitations. While Judge Jackson did not consider

Defendants' statute of limitations arguments at the motion to dismiss stage, such arguments would be appropriate for adjudication at summary judgement.

32.    Second, while discovery was still at the early stages when the Settlement was reached, internal documents produced by Defendants so far appear to show that pricing was increasing leading up to and following the IPO. This information, if verified, together with the undisputed fact that Liberty's revenue and profits increased from 2017 to 2019, would pose a significant challenge at summary judgement for Plaintiffs' claim that there was oversupply in the fracking industry and that it was negatively affecting Liberty's pricing at the time of the IPO.

33.    Third, Defendants have compelling arguments that the Settlement Class suffered any recoverable damages. Defendants have argued that the decline in Liberty's stock price tracked a general decline in oil prices and the stock of Liberty's competitors, and was not Liberty-specific. Moreover, Defendants have also argued that Liberty at various times in late 2018 and 2019 announced that there was oversupply in the fracking industry and that Liberty was cutting prices – the very information that Plaintiffs allege to have been concealed – but Liberty's stock price did not react in a statistically significant way.

34.    Indeed, without a Settlement, Plaintiffs could potentially expend significant time and incur substantial expenses completing fact and expert discovery – including the review and analysis of voluminous documents and the taking of numerous fact and expert depositions – only to lose at summary judgment and end up with nothing.

35.    Hence, Plaintiffs and Lead Counsel submit that this $3.9 million Settlement, which provides an immediate and certain cash recovery, is in the best interest of the Settlement Class.

36. According to Plaintiffs' expert, the maximum damages potentially recoverable under Plaintiffs' theory of the case is $101 million, but that is Plaintiffs' best-case scenario assuming Plaintiffs defeat all of Defendants' arguments against liability and damages and win at trial. The Settlement, which represents approximately 3.9% of Plaintiffs' best-case, maximum damages, is within the range of approved settlements in securities class actions, particularly here where there is substantial risk that Plaintiffs might recover nothing absent a settlement. *See* Ex. 6, NERA Report (showing that in 2021, securities class actions settled for a median of 1.8% of damages).

**The Settlement Resulted From Arm's-Length Negotiation Between Experienced Counsel with the Assistance of a Well-Regarded Mediator**

37. This Settlement was the result of a full-day mediation with a nationally-recognized mediator followed by weeks of hard-fought, post-mediation negotiations between experienced counsel with the mediator's continued involvement.

38. Lead Counsel has extensive experience and a long track record of success representing investors in securities class actions in courts throughout the country. *See* Ex. 5, Rosen Law Firm Resume.

39. Defendants are represented by capable and experienced counsel from Shearman & Sterling LLP, Davis Polk & Wardwell LLP, and Haynes and Boone LLP, three well-respected firms with considerable experience defending securities class actions.

40. The mediator, Mr. Meyer of JAMS, is a well-regarded mediator with substantial experienced mediating complex securities class actions like this one.

41. At the time the Settlement was reached, Plaintiffs were well aware of the strengths and weaknesses of their case. For example, they had: (a) conducted a thorough factual

8

investigation, including interviews of former Liberty employees and other persons with knowledge of relevant information; (b) drafted a detailed amended complaint; (c) fully briefed and defeated Defendants' motion to dismiss; (d) initiated discovery, including reviewing and analyzing more than 6,500 pages of documents produced by Liberty; (e) taken the deposition of Defendants' class certification expert; (f) fully briefed Plaintiffs' motion for class certification; (g) exchanged detailed and candid mediation briefs with Defendants; (h) participated in a full-day mediation with Mr. Meyer; and (i) engaged in weeks of tough settlement negotiations following the mediation. As a result of these efforts, among others, Plaintiffs were well-informed when they negotiated the terms of the Settlement.

### The Plan of Allocation

42. The Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") describes the Plan of Allocation. Ex. 1, Craig Decl. at Ex. A (Long Notice) at pp. 5-7. Lead Counsel formulated the Plan of Allocation with the help of a financial consultant to distribute the Settlement Fund fairly and reasonably to Settlement Class Members consistent with the federal securities laws.

43. The Plan of Allocation provides for distribution of the Net Settlement Fund to Authorized Claimants who suffered losses on their Class Period transactions in Liberty common stock on a *pro rata* basis. Each Authorized Claimant's Recognized Loss is calculated based on when the investor purchased and sold shares of Liberty common stock. Because Liberty common stock was trading at above the IPO price of $17 for a lengthy part of the Class Period, the Plan of Allocation does not provide a Recognized Loss for those purchased Liberty common stock during the Class Period but who sold their shares at above the IPO price of $17. The Plan of

9

Allocation's formula for calculating Recognized Loss is the same for all Settlement Class Members, including Plaintiffs.

44.    In sum, the Plan of Allocation was designed to fairly and rationally allocate the proceeds of the Net Settlement Fund among Settlement Class Members.

**The Reaction of the Settlement Class**

45.    To date, 22,151 potential Settlement Class Members have received notice of the Settlement. Craig Decl. at ¶8. This includes 18,417 Postcard Notices mailed by the Claims Administrator and third-party nominees such as brokerage firms and banks, and an additional 3,581 potential Settlement Class Members who received a direct link to the Long Notice from their nominees.  *Id.* at ¶¶ 6-7.  The Summary Notice was also published electronically over *Globe Newswire*. *Id.* at ¶10.

46.    The deadline to object to, or request exclusion from, the Settlement is September 16, 2022. To date, neither the Claims Administrator nor Lead Counsel has received any objections to any aspect of the Settlement, or any requests for exclusion from the Settlement. *Id.* at ¶¶13-14.

47.    If any objections or requests for exclusions are received after the date of this declaration, Plaintiffs will address them in Plaintiffs' reply in support of the instant motions.

**Lead Counsel's Fee Request is Justified**

48.    Lead Counsel has worked diligently to achieve the Settlement, expending 1,022.25 hours to date for a lodestar value of $823,290.00. The lodestar multiplier for the

requested fee is 1.58.[2] The rates Lead Counsel billed for their attorneys are comparable to peer

plaintiff and defense firms litigating matters of similar magnitude. *See* Ex. 5, Peer Firms Billing

Rates.

49.    The chart below is a summary of time expended by the attorneys and professional

staff of Rosen Law on this Action, and the lodestar calculation based on their current billing rate.

The chart was prepared from contemporaneous, daily time records regularly maintained by my

firm. Time spent in preparing the motion for attorneys' fees and expenses, an any other time

related to billing or periodic time reporting, have not been included in this chart:

| Professional (Position)* | Years in Practice | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|---|
| Laurence Rosen (P) | 33 | $1,025 | 125.60 | $128,740.00 |
| Phillip Kim (P) | 20 | $975 | 5.50 | $5,362.50 |
| Jonathan Horne (P) | 13 | $875 | 5.30 | $4,637.50 |
| Yu Shi (C) | 11 | $800 | 711.20 | $568,960.00 |
| Erica Stone (A) | 9 | $700 | 77.70 | $54,390.00 |
| Michael Cohen (A) | 8 | $675 | 70.10 | $47,317.50 |
| Scott Kim (A) | 5 | $600 | 10.90 | $6,540.00 |
| Ryan Hedrick (A) | 3 | $550 | 10.75 | $5,912.50 |
| Zachary Stanco (PL) | n/a | $275 | 5.20 | $1,430.00 |
| **Total** | | | **1,022.25** | **$823,290.00** |

* Partner (P), Counsel (C), Associate (A), Paralegal (PL)

50.    Lead Counsel spent a total of $42,279.72 in unreimbursed expenses in connection

with the prosecution of this Action, considerably less than the $65,000 amount described in the

---

[2] $1,300,000 / $823,290 = 1.58.

Long Notice, Postcard Notice, and the Summary Notice of Pendency and Proposed Class Action

Settlement. Lead Counsel has received no compensation from this case during the litigation.

51.    Lead Counsel's litigation expenses are broken down as follows. These expenses

are reflected in the firm's books and records. These books and records are prepared from expense

vouchers, check records, and financial statements prepared in the normal course of business for

my firm and are an accurate record of the expenses incurred in the prosecution of this Action.

| Category | Amount |
|---|---|
| Court Fees | $939.00 |
| Document Hosting (*i.e.* Relativity) Fees | $2,596.15 |
| Expert Fees | $8,998.00 |
| Investigator Fees | $4,500.00 |
| Mediation Fees | $8,225.00 |
| Online Legal Research and Document Retrieval Fees | $1,303.44 |
| Service of Process Fees | $86.00 |
| Press Release / Notice to Class Member Fees | $4,692.50 |
| Photocopying and Printing Expenses | $76.00 |
| Transcript Fees | $2,011.90 |
| Travel/Meal Expenses* | $8,851.73 |
| **TOTAL EXPENSES** | **$42,279.72** |

*Including $500 in estimated expenses associated with attending the Settlement Hearing on October 7, 2022.

52.    From the outset, Lead Counsel understood it was embarking on a complex,

expensive, and likely lengthy litigation with no guarantee of ever being compensated for the

substantial investment of time and money the case would potentially require. In undertaking that

responsibility, Lead Counsel ensured that sufficient resources were dedicated to the Action and

that funds were available to compensate staff and to cover the expenses the case would require.

With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis.

53.    Lead Counsel's work in this Action included, among other things:

    a.  investigating and preparing the initial complaint;

    b.  preparing the motion for appointment of lead plaintiff;

    c.  conducting a thorough investigation, including a comprehensive review of Liberty's public filings, announcements, press releases, earnings call transcripts, and searching for and analyzing other publicly-available sources relevant to the claims at issue;

    d.  retaining and overseeing a private investigator to locate and interview former Liberty employees;

    e.  drafting and filing the amended complaint;

    f.  preparing an opposition to Defendants' motion to dismiss;

    g.  retaining and consulting with an economic expert concerning damages;

    h.  propounding discovery requests and responding to Defendants' discovery requests;

    i.  preparing for and defending Plaintiffs' depositions (Mr. Correa in Brawley, California and Mr. Joseph in Scottsdale, Arizona);

    j.  reviewing over 6,500 pages of documents produced by Defendants;

    k.  preparing for and taking the deposition of Defendants' class certification expert;

    l.  fully briefing Plaintiffs' motion for class certification;

m. preparing mediation submissions, and analyzing Defendants' mediation submissions;

n. attending a full-day deposition;

o. preparing the Stipulation and exhibits, and filing the motion for preliminary approval of the Settlement; and

p. overseeing the claims administrator's work;

54. Lead Counsel's work will not end with the filing of the instant motions or the Court's approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing the replies in support of its motions, preparing for and appearing at the Settlement Hearing scheduled for October 7, 2022, assisting Settlement Class Members with their Claim Forms, overseeing the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries.

**The Requested Award to Plaintiffs is Justified**

55. Plaintiffs have devoted a substantial amount of time leading this Action on behalf of the Settlement Class, including, among other things: (a) reviewing the complaints and other significant case documents; (b) searching for and producing documents related to the litigation, and gathering information to respond to Defendants' interrogatories; (c) preparing and sitting for their depositions in support of class certification; (d) communicating regularly with counsel throughout the pendency of this Action concerning case posture and strategy; (d) evaluating and approving the Settlement. *See* Ex. 2 (Correa Decl.) and Ex. 3 (Joseph Decl.). Accordingly, Plaintiffs request an award in the amount of $7,500 each ($15,000 in total) to compensate them for this time.

Executed this 9th day of September, 2022, in New York, NY.

*/s/Laurence Rosen*
Laurence Rosen